NUREDDIN, Admr., Appellant,

v.

NORTHEAST OHIO REGIONAL SEWER DISTRICT et al., Appellees.

[Cite as *Nureddin v. Northeast Ohio Regional Sewer Dist.* (1995), 104 Ohio App.3d 672.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68048.

Decided June 19, 1995.

*Mark A. McClain*, for appellant.

*Smith, Marshall & Weaver, Philip J. Weaver* and *Mary B. Percifull; Sara J. Fagnilli*, for appellees.

---

*Per Curiam.*

Plaintiff-appellant, Patricia Nureddin, as Administrator of the Estate of Said Nureddin, appeals from the granting of summary judgment in favor of defendants-appellees, the Northeast Ohio Regional Sewer District (the "District") and various trustees, officers and employees thereof, by the Court of Common Pleas of Cuyahoga County. Appellant submits there are genuine issues of material fact regarding whether the appellees' alleged negligent acts and/or omissions proximately caused Said Nureddin's death. A careful review of the record compels reversal and a remand of the action.

Said Nureddin ("the decedent") was working the day shift at the District's Easterly Waste Water Treatment Plant in Cleveland, Ohio on January 23, 1992.

He entered a control room at the plant sometime after lunch and spoke with Ellis Jackson, the control room operator. Jackson observed that the decedent's perspiration was abnormally heavy, *i.e.*, his shirt was two-thirds wet, front and back from the shoulders downward, so he asked him what was wrong. The decedent responded that he was sick, but Jackson thought nothing of it since people often become ill. The decedent then went in the restroom which was adjacent to the control room and closed the door.

When Jackson did not hear any noise from the restroom for approximately thirty minutes, he opened the door. He found the decedent, standing by the sink with a wet towel in his hand. Jackson observed vomit running down the sink and on the floor. Jackson asked the decedent again what was wrong, and the decedent replied that he was sick. Thinking that the decedent merely had an upset stomach, Jackson left him alone, and the decedent closed the door.

Jackson later opened the restroom door a second time and saw the decedent, fully clothed, sitting on the toilet. The decedent replied once again that he was sick when asked by Jackson. Jackson next inquired as to whether the decedent wanted to speak with his supervisor, Timothy Zak.

Jackson called Zak at about 1:20 p.m. to inform him of the decedent's illness. Zak arrived immediately at the control room and observed the decedent seated on the toilet. Zak saw the vomit on the floor, but he could not tell that the decedent was perspiring. The layout of the restroom obscured Zak's ability to see all of the decedent's face. Zak asked the decedent what he could do for him. The decedent responded that he was sick and wanted to go to the hospital. Zak concluded that the decedent had the flu.

According to Jackson's deposition, Zak also asked the decedent whether he wanted him to call for an ambulance. The decedent told Zak to do so as well as to contact his wife. Jackson's written statement of the events of January 23, 1992 provided that Zak asked the decedent if he wanted to see a doctor and if he wanted Zak to telephone his wife. There was no mention of an ambulance in the statement, but it set forth that Zak told the decedent he could not be transported to a hospital because his illness was not work-related.

Zak thereafter consulted with his supervisor and the plant superintendent to confirm his understanding of the District's policy toward nonwork-related illnesses. Upon Zak's return to the control room, Jackson overheard him tell the decedent that an ambulance could not be called because his sickness was not work-related. Zak, however, testified that he advised the decedent that security could not take him to the hospital, but that an ambulance could be called or Zak could contact the decedent's wife. According to Zak, the decedent opted to have Zak contact his wife. Zak later told the decedent that he attempted to contact his wife, but she was out to lunch. The decedent then elected to wait for his wife

rather than be transported elsewhere by anyone else. Zak then left the area to attend a sales meeting.

Jackson sometime later asked the decedent whether he wanted to leave the restroom. Jackson took the decedent's arm and helped him into the control room where he then seated the decedent at his desk. A few minutes later, Jackson left the control room to take a shower.

The decedent appeared to be coherent to Jackson from the time he arrived in the control room and during his time in the restroom. Moreover, Jackson did not hesitate to leave the decedent alone because he did not know that he was seriously ill.

Another employee, Ernest Troy, entered the control room before a scheduled 2:00 p.m. break and learned that the decedent was ill. Troy went to the restroom to check on him. He found the perspiring decedent standing over the toilet. Troy asked the decedent what was wrong, to which the decedent responded that he was "okay." Troy then left the control room with the impression that the decedent was "okay."

Troy then spoke with other employees and all of them were wondering why an ambulance was yet to be called for the decedent. Seeing the decedent vomiting, Troy went to speak with Zak. Zak recognized that the decedent's fellow employees were concerned, but added that there was "nothing else I can do," other than contact the decedent's wife. Troy specifically asked Zak whether EMS would be called or if security would take the decedent out, but Zak replied that since the decedent's injuries were not work-related, security could not move him. At this point, Troy left in frustration because he feared he would say something he would regret later.

Michael Taylor testified in his deposition that when he learned about the decedent's condition at approximately 2:30 p.m., he asked him whether he was suffering from either a headache or stomach ache. The decedent responded in the negative. Taylor also asked the decedent if he thought he had the flu; the decedent likewise responded, "no," adding that he did not know what was wrong.

Taylor, learning that the decedent was awaiting his wife's arrival, suggested that the decedent go ahead to a hospital. Taylor told the decedent that he would tell his wife that he went ahead. Taylor was concerned for the decedent because he "looked real bad."

Taylor observed that the decedent, who was soaking wet, put his head down on Jackson's desk sometime between 2:00 and 3:00 p.m. Taylor called security and stated that there was a sick man in the control room after Troy left the control room to find Zak. Taylor stood in front of the decedent at this time in order to protect him from falling off the desk. Meanwhile, Jackson returned to the

control room and looked at the decedent's eyes at Taylor's request, and saw that they were glazed. The decedent then became unresponsive. A security guard arrived in the control room by this time, evaluated the decedent's condition, and contacted the security office for an ambulance.

The EMS report indicated that the decedent was "down" approximately thirty to forty-five minutes before anyone called for emergency services, a call which occurred at approximately 2:41 p.m. Said Nureddin was pronounced dead at 3:31 p.m. with the cause of death listed in the death certificate as coronary sclerotic heart disease.

Following the filing of appellant's complaint on January 21, 1994, the defendants filed a motion for summary judgment on August 22, 1994. The trial court granted the motion on September 29, 1994, finding that there was "no evidence that the employer knew the decedent was in imminent danger of serious harm prior to the actual calling of EMS."

This accelerated appeal followed with appellant claiming as error:

"The lower court committed reversible error when it granted summary judgment to the defendants-appellees because there remains an issue of fact with respect to whether appellant had a duty of care to appellant's decedent to protect him from imminent danger of serious physical harm."

Appellant submits that the record contains sufficient evidentiary support that a genuine issue of material fact remains for litigation as to "whether the Appellees knew or should have known that Appellant's Decedent was in imminent danger of serious physical harm." Appellees counter that the decedent merely appeared to be suffering from the flu; therefore, their failure to immediately provide emergency services was not an act of negligence.

 The granting of summary judgment is appropriate only if there is no genuine issue as to any material fact, and reasonable minds can come to but one conclusion which is adverse to the nonmoving party. *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 201, 24 OBR 426, 429, 494 N.E.2d 1101, 1104; Civ.R. 56(C). An order granting summary judgment will, therefore, be upheld only where the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law when construing the evidence most strongly in favor of the nonmoving party. *Johnson v. New London* (1988), 36 Ohio St.3d 60, 521 N.E.2d 793; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. Summary judgment is a procedural device which is used to terminate litigation and, therefore, must be awarded with caution with all doubts resolved in favor of the nonmoving party. *Osborne v. Lyles* (1992), 63

Ohio St.3d 326, 333, 587 N.E.2d 825, 831; see, also, *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138, 140.

With regard to procedure:

"Upon a motion for summary judgment pursuant to Civ.R. 56, the burden of establishing that the material facts are not in dispute and that no genuine issue of fact exists is on the party moving for summary judgment. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46." *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 117, 522 N.E.2d 489, 505.

However, "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Celotex v. Catrett* (1986), 477 U.S. 317, 322–323, [106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265, 273]. See, also, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 113, 526 N.E.2d 798, 800–801." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

■ Appellees in the present case concede that the state of Ohio has adopted Restatement of the Law 2d, Torts (1965), Section 314B. This section, entitled "Duty to Protect Endangered or Hurt Employee" reads as follows:

"(1) If a servant, while acting within the scope of his employment, comes into a position of imminent danger of serious harm and this is known to the master or to a person who has duties of management, the master is subject to liability for a failure by himself or by such person to exercise reasonable care to avert the threatened harm.

"(2) If a servant is hurt and thereby becomes helpless when acting within the scope of employment and this is known to the master or to the person having a duty of management, the master is subject to liability for his negligent failure or that of such person to give first aid to the servant and to care for him until he can be cared for by others."

In the instant case, appellees fail in their attempt to refute evidence that the decedent requested an ambulance when Zak first appeared in the control room. Jackson never "recanted" his deposition testimony, as suggested by appellees, that Zak asked the decedent whether he wanted an ambulance. Though Jackson's version of the events was reduced to a statement and the statement contained no reference to an ambulance, Jackson testified in his deposition that his full account was not included in the written statement. Jackson's deposition testimony furthermore included the following: "A few minutes later Zak came back and he told Nureddin [the decedent] that we couldn't call an ambulance because your sickness or whatever wasn't work related." If the decedent never

requested an ambulance, there would have been no need for Zak to advise him that he could not call for an ambulance.

Not only was there evidence that the decedent wanted to go to the hospital, but the record overwhelmingly demonstrates that the appellees' primary concern was that the decedent's illness was not work-related. It appears from the evidence that once the illness was determined to be not work-related, the question as to whether to seek emergency treatment was never considered by appellees. In other words, the issue as to the seriousness of the decedent's condition did not appear to be much of a concern to anyone except eventually to Jackson, Taylor and Troy. The decedent's fellow employees for the most part assumed that he was not seriously ill, *i.e.,* that he was most likely suffering from the flu. However, the fact remains that the decedent requested an ambulance, or at least wanted to go to the hospital.

A review of the evidentiary materials filed by both parties discloses that when construing the evidence in a light most favorable to appellant, reasonable minds could come to more than one conclusion as to whether the appellees breached the duty of care owed by them to the decedent. Civ.R. 56(C); *Johnson; Temple.* The granting of summary judgment is technically a simple act because the judgment can be entered with one sentence. It is, however, an act which still requires caution and a thorough review of the record and evidentiary materials with all doubts resolved in favor of the nonmoving party. *Osborne.* In the present case, the doubt as to whether the appellees should have heeded the decedent's request to either call an ambulance or be taken to the hospital, requires a reversal of the summary judgment. Appellant's assignment of error is sustained.

The judgment is reversed and the cause is remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BLACKMON, P.J., HARPER and NAHRA, JJ., concur.