JOURNAL ENTRY AND OPINION
Plaintiffs-appellants Jozsef and Magdolna Balogh (Balogh), husband and wife, appeal from the judgment of the trial court granting defendants-appellees Goldstein Properties, William Goldstein dba Goldstein Properties, and Goldstein Family Limited Partnership (collectively Goldstein) motion for summary judgment in this slip-and-fall premises liability negligence action. For the reasons adduced below, we affirm.
A review of the record on appeal indicates that on March 16, 1996, the Baloghs were renting a basement apartment next to the laundry room in an apartment building owned by the Goldsteins and located at 3430 Avalon Road, Cleveland, Ohio. On the afternoon of that date, Mr. Balogh was washing two loads of his family's laundry.[1] After putting the two loads into separate washing machines, Mr. Balogh returned to his apartment in the building. A short time later, Mr. Balogh returned to the illuminated laundry room to put the washed laundry into separate dryers. Accomplishing this task, he returned to his apartment. Some time later, he returned to the laundry room to retrieve his washed and dried clothes. On this final trip, while carrying his dried clothes in a plastic hamper, he allegedly tripped and fell after stepping into the open floor drain in the aisle way of the laundry room floor, in between the washing machines and the corner of the room. See deposition of Mr. Balogh at 29. A wire shopping cart was placed in the corner of the room which kept foot traffic in the room in the aisle way. The offending floor drain was described as being approximately four-to-six square inches in size, and had existed, according to appellants, since between August 5, 1995 to March 16, 1996, when a laundry tub or deep sink, which had previously been above the drain, was removed, leaving the floor drain exposed. The drain was not concealed from view.
The case was filed by the Baloghs on February 18, 1998.
On May 15, 1998, the trial court issued a case management order which instructed that: all discovery be completed by August 14, 1998; defendants' expert report due by June 15, 1998; plaintiffs' expert report due by August 14, 1998; dispositive motions be filed before August 28, 1998; the matter be referred to arbitration on November 16, 1998; final pretrial set for March 3, 1999; trial scheduled for March 15, 1999.
On August 18, 1998, the trial court granted defendants' motion for extension of the discovery deadline, expert report exchange and dispositive motion deadline to, collectively, November 16, 1998.
On October 6, 1998, attorney George Nyerges entered his appearance as counsel for plaintiffs, replacing the original trial counsel for plaintiffs. That same date, October 6, 1998, attorney Nyerges filed a motion to continue the proceedings for forty-five days because he wished to file discovery in the case and to answer discovery that was owed to the defense.
On November 16, 1998, the defense motioned to extend the dispositive motion deadline. On November 19, 1998, the plaintiffs filed a similar motion to extend the dispositive motion deadline. The trial court granted these two motions on December 30, 1998.
On December 4, 1998, the defense filed its motion for summary judgment. This motion was supported by the following: (1) excerpts from the deposition of Mr. Balogh;[2] (2) copies of exhibits from Mr. Balogh's deposition; (3) an affidavit by Olga Goldstein (a co-owner of the apartment building in question); and, (4) several copies of case law.
The case was referred to arbitration on December 8, 1998.
The plaintiffs filed their brief in opposition to summary judgment on December 15, 1998. This brief in opposition was supported by the following: (1) an affidavit by Mr. Balogh; (2) copies of municipal housing department inspection reports on the apartment building dating from 1984, 1988, 1993, 1994, 1995;[3] and, (3) excerpts from the deposition of Mr. Balogh.
On December 28, 1998, the defense motioned the court to remove the case from arbitration in order to permit ruling on the motion for summary judgment. This motion was granted on January 7, 1999. On January 12, 1999, the court conducted a pretrial conference at which time the parties were advised that the discovery schedule would not be extended.
On January 14, 1999, the plaintiffs filed a motion requesting an extension of the discovery deadline so as to permit: (1) the filing of interrogatories on the defense; (2) request a production of documents from the defense; and, (3) request an admission of facts from Olga Goldstein. This motion was denied on January 14, 1999. The defense filed on January 20, 1999, a brief opposing the discovery extension motion of January 14, 1999. On January 21, 1999, the plaintiffs filed a reply brief to this defense opposition. The court, on March 3, 1999, denied the plaintiffs' discovery motion of January 14, 1999, and also granted the motion for summary judgment filed by the defense. The notice of appeal is from the orders of March 3, 1999.
Three assignments of error are presented for review. These assignments all argue the same premise, viz. that summary judgment was improperly granted; however, they will be discussed out of the order presented so as to provide a more logical review.
The second assignment of error states:
II
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED THE APPELLANT'S (SIC) MOTION FOR LEAVE TO EXPAND TIME TO FILE INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR ADMISSIONS OF FACT PROPOUNDED TO OLGA GOLDSTEIN, INSTANTER FILED JANUARY 14, 1999.
The language of this assignment, without mentioning the application of Civ.R. 56(F), seemingly argues that the trial court erred in denying an extension of the discovery schedule to permit plaintiffs to properly oppose the pending motion for summary judgment. This argument is without merit.
Civ.R. 56(F) provides:
 (F) When affidavits unavailable. Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
In State, ex rel. Coulverson v. Ohio Adult Parole Authority (1991), 62 Ohio St.3d 12, the court determined that in order to invoke the application of Civ.R. 56(F), the party seeking a continuance for the purpose of conducting discovery must submit a valid affidavit in support of the continuance. In the case sub judice, the Baloghs' January 14, 1999 motion for continuance to permit further discovery was not supported by counsel's affidavit or the Baloghs' affidavit. Accordingly, the trial court did not err in denying the January 14, 1999 motion to extend the discovery schedule.
The second assignment of error is overruled.
The first and third assignments will be discussed jointly since they both argue that summary judgment was improperly granted.
I
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST THE PLAINTIFFS/APPELLANTS.
III
 THAT THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS/APPELLANTS IN ITS RULING GRANTING THE DEFENDANTS/APPELLEES' MOTION FOR SUMMARY JUDGMENT FILED DECEMBER 4, 1998.
The standard of review relative to a summary judgment ruling was recently stated by this court:
 The standard for granting a motion for summary judgment is set forth in Civ.R. 56(C).
 In applying this rule, the Ohio Supreme Court has consistently held that, before such a motion can be granted, the moving party must show that: (1) there is no genuine issue of fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the non-moving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispaw v. Eckstein(1996), 76 Ohio St.3d 383, 667 N.E.2d 1197; Welco Industries, Inc. v. Applied Cas. (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129; Osborne v. Lyles (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.
 A motion for summary judgment forces the non-moving party to produce evidence on issues for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, syllabus. The non-movant must also present specific facts and may not merely rely upon the pleadings or upon unsupported allegations. Shaw v. Pollack Co. (1992), 82 Ohio St.3d 656. When a party moves for summary judgment supported by evidentiary material of the type and character set forth in Civ.R. 56(E), the opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56(C) to show that there is a genuine issue for trial. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 375 N.E.2d 46.
In Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264, the Ohio Supreme Court discussed the standard to be applied when reviewing motions for summary judgment. The court stated:
 Again, we note that there is no requirement in Civ.R. 56 that any party submit affidavits to support a motion for summary judgment. See, e.g., Civ.R. 56(A) and (B). There is a requirement, however, that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56(C).
Id. at 298, 662 N.E.2d 264.
 The court's analysis of an appeal from a summary judgment is conducted under a de novo standard of review. See Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765; Howard v. Willis (1991), 77 Ohio App.3d 133, 601 N.E.2d 515. No deference is given to the decision under review, and this court applies the same test as the trial court. Bank One of Portsmouth v. Weber (Aug. 7, 1991), Scioto App. No. 1920, unreported.
Tagliarina v. Tumino (Oct. 28, 1999), Cuyahoga App. No. 74962, unreported, 1999 WL 980597, at 2-3.
In our review of the motion for summary judgment, we are also mindful that such appellate review is de novo. Koos v. Cent. Ohio Cellular Inc. (1994), 94 Ohio App.3d 579.
To establish a negligence claim, a plaintiff must demonstrate the following: (1) the existence of a duty; (2) a breach of this duty; and, (3) injuries proximately resulting from that breach of duty. Chambers v. St. Mary's School (1998), 82 Ohio St.3d 563,565; Strother v. Hutchinson (1981), 67 Ohio St.2d 282. In order for a plaintiff to recover damages from a slip and fall accident as a business invitee, the following must be established in order to find that the possessor breached the duty of ordinary care:
 1. That the defendant through its officers or employees was responsible for the hazard complained of; or
 2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
 3. That such danger existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.
Combs v. First Natl. Supermarkets, Inc. (Cuyahoga, 1995),105 Ohio App.3d 27, 29, citing Johnson v. Wagner Provision Co. (1943), 141 Ohio St. 584, 589; also Strother v. Hutchinson (1981),67 Ohio St.2d 282.
It is uncontested that Mr. Balogh, as a tenant, was an invitee of the possessor of the premises at the time of the accident. As such, the defendants had a duty to exercise ordinary or reasonable care for his safety and protection, and this includes having the premises in a reasonably safe condition and warning invitees of latent or concealed defects or perils of which the possessor has or should have knowledge. See Patete v. Benko (1986), 29 Ohio App.3d 325,327-328. However, where the hazard is open and obvious, there is no duty to warn of the danger:
 Further, it is well settled that "[a]n owner or occupier of land owes no duty to warn invitees entering the property of an open and obvious danger on its property." Musa v. Musa (Dec. 10, 1996), Franklin App. No. 96APE07-831, unreported, 1996 WL 715473. The rationale behind this rule is that an open and obvious danger itself serves as a warning and the owner may reasonably expect that individuals entering the premises will discover such danger and take appropriate measures to protect themselves. Id.
Mullens v. Binsky (Sept. 24, 1998), Franklin App. No. 97APE11-1451, 1998 WL 655094, at 4; also see Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203 (there is no duty to protect an invitee from perils which are open and obvious).
In the case sub judice, we find no error in the granting of summary judgment. The evidence demonstrates that the hazard represented by the floor drain in the aisle way was open and obvious to view, not a latent defect. The area in question was known to Mr. Balogh through his custodial duties at the building. In addition, in doing his laundry on the date of the accident, Mr. Balogh successfully traversed the open hazard several times during the course of his trips to and from the laundry room before stepping into the drain and falling to the floor while carrying his dried clothes back to his apartment on his last trip to the laundry room.
The first and third assignments are overruled.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
TIMOTHY E. McMONAGLE, P.J., and PATRICIA A. BLACKMON, J., CONCUR.
 ______________________________ JAMES D. SWEENEY, JUDGE
[1] From September of 1994 to August of 1995, the Baloghs, while tenants, performed custodian work in the building. Part of the custodial duties was to clean and mop the laundry room floor and clean the machines. See deposition of Mr. Balogh at 20-21.
[2] Mr. Balogh's deposition was filed with the trial court on November 10, 1998.
[3] While these housing reports detail a number of complaints with the maintenance of the property, none of the complaints relate to the floor drain in question at any time. At best, one of the complaints in 1994 details a leaky faucet in the laundry tubs which had formerly been using the drain.