OSBORNE ET AL., APPELLANTS, *v.* LYLES; CITY OF CLEVELAND, APPELLEE.

[Cite as *Osborne v. Lyles* (1992), 63 Ohio St.3d 326.]

(No. 90–1807—Submitted November 6, 1991—Decided April 1, 1992.)

*Spangenberg, Shibley, Traci & Lancione, Ellen Simon Sacks* and *James A. Marx,* for appellants.

*Danny R. Williams*, Director of Law, and *Barbara R. Marburger*, for appellee.

---

ALICE ROBIE RESNICK, J.   This case comes before the court from the grant of a motion for summary judgment.   "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated;  (2) the moving party is entitled to judgment as a matter of law;  and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.   Moreover, " * * * upon appeal from summary judgment, the reviewing court should look at the record in the light most favorable to the party opposing the motion." *Campbell v. Hospitality Motor Inns, Inc.* (1986), 24 Ohio St.3d 54, 58, 24 OBR 135, 138, 493 N.E.2d 239, 242.

## I

The record evinces the following pertinent facts [3]: Figueroa and Osborne entered the R & T Tavern located on Payne Avenue in the city of Cleveland at approximately 9:45 p.m. on February 13, 1984.   Shortly thereafter, someone asked if anyone on the premises owned a green automobile.   Figueroa was the owner of a green automobile.   Hence, both of the appellants exited the bar and observed that Figueroa's car, which was parked in the street, had been hit by another vehicle.   The other automobile was operated by Cleveland Police Officer Michael Lyles, who, while not in uniform, had been driving to work when he lost control of his personal vehicle and struck Figueroa's vehicle. Lyles was due to go on duty at either 10:30 or 11:30 p.m.

As appellant Osborne approached Figueroa's damaged car, Lyles confronted him and ordered Osborne to leave the area.   After Osborne twice refused to leave, Lyles took a swing at Osborne with his fist.   A brief scuffle ensued, and Lyles drew a pistol and announced he was a Cleveland police officer. Osborne turned to run back into the bar, at which time Lyles with gun in hand struck Osborne in the head or shoulder.   Lyles then pursued Osborne into the bar.   With his revolver and badge drawn, Lyles ordered everyone to back off, identified himself as a police officer and forced Osborne to the floor.   Several

---

3. As this case was disposed of on summary judgment, the evidence consists mainly of deposition testimony and affidavits.

witnesses testified that Lyles held the gun to Osborne's head while ordering other bar patrons to "back off."

During the initial encounter between Lyles and Osborne out in the street, Figueroa ran back into the bar to call the police. Figueroa informed the police operator that there was an accident in front of the bar, and that a man was threatening his friend (Osborne) with a gun. He apparently did not identify Lyles as being a Cleveland police officer. After placing this phone call, Figueroa saw Lyles threatening Osborne and forcing him to lie on the floor. Figueroa then called the Cleveland Police a second time. This time, Figueroa informed the operator that there was a man inside the bar with a gun, but again did not identify Lyles as a police officer. Figueroa then exited the phone booth and observed Lyles pointing the gun at both Osborne and other patrons inside the bar. Within five to fifteen minutes, on-duty Cleveland police officers arrived at the scene. The responding officers took control of the scene, initially unaware that Lyles was an off-duty police officer. Subsequently, one of the officers recognized Lyles as a Cleveland police officer.

Patrol Officer Linda Bazley was one of the officers to arrive on the scene. She testified that she and her partner went inside the bar and observed a lot of screaming and yelling, and that the bar patrons were "hysterical." After visually locating Officer Lyles, the two officers, not recognizing him at first, identified themselves and ordered Lyles to drop his gun. Lyles did not respond, and Bazley stated that her partner was about to shoot Lyles when Bazley recognized Lyles as being a police officer. Lyles told Officer Bazley that he had placed someone under arrest, although Bazley did not herself see Lyles place anyone under arrest. With the situation apparently under control, Bazley called her sergeant, William Manocchio.

Sergeant Manocchio stated that although he could not remember how the call to respond came in, departmental procedure required that whenever an off-duty officer is involved in an accident, that officer's supervisor was to respond and conduct an investigation. Sergeant Manocchio testified that when he first arrived, there were a lot of police cars already on the scene. The sergeant also suggested that there may have been racial tension surrounding the events that transpired, in that there were numerous Caucasian persons on the scene and Lyles was the only black person. Manocchio stated that Lyles was "scared to death. I mean he was literally shaking." Manocchio also stated that all he could remember Lyles telling him about the accident was that "he lost control and hit a parked car."

Officer Lyles' watch commander at the time of the incident was Lieutenant Gail M. Maxwell. She testified that Lyles was to begin his shift at either 10:30 or 11:30 that evening. However, when he reported for duty, Lyles

informed Lieutenant Maxwell that "he had been involved in a small accident and that when he got out, that two males exited the bar across the street from where the accident had occurred, that they shouted racial obscenities at him and that an altercation ensued, and that at the time he had tried to place them under arrest and that Third District cars had arrived on the scene * * *." Lyles also stated that he had been injured and asked to go to the hospital. Maxwell reiterated that Lyles stated to her that "he tried to arrest these people because of the fact that they had assaulted him." Maxwell also stated that no disciplinary action was ever taken against Lyles for the incident.

Cleveland Police Captain Edward J. Malloy, while not attached to the district in question and off duty at the time, testified that he received a phone call at home from a friend informing him that Osborne, also a friend, was being held at gunpoint in a bar, that the person was threatening to kill Osborne, and that this person was a police officer. Captain Malloy immediately went to the scene to determine what was taking place. Several police officers were already at the bar when Captain Malloy arrived and the situation was under control. Malloy stated that Osborne had shoulder injuries and was taken to a hospital. Captain Malloy also stated that the supervisor of an off-duty officer has a duty to investigate an accident involving that officer.

## II

Appellants assert that liability should be imposed upon the city under several theories, including general agency principles and the doctrine of *respondeat superior*. The city counters by arguing that Lyles was not authorized to conduct himself in the manner in which he acted, and that Lyles was clearly outside the scope of his employment at the time of these events. We believe the issues relating to the application of *respondeat superior* are dispositive, and we will confine our analysis to that issue.

The doctrine of *respondeat superior* is expressed in the Restatement of the Law 2d, Agency (1958) 481, Section 219(1), which states as follows: "A master is subject to liability for the torts of his servants committed while acting in the scope of their employment." Ohio law provides, "[i]t is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional, * * * the behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed * * *.' " (Citations omitted.) *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 58, 565 N.E.2d 584, 587. In general, "an intentional and wilful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure

from his employment and his principal or employer is not responsible therefor. * * * " (Citations omitted.) *Vrabel v. Acri* (1952), 156 Ohio St. 467, 474, 46 O.O. 387, 390, 103 N.E.2d 564, 568. Stated otherwise, "an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Byrd, supra,* 57 Ohio St.3d at 59, 565 N.E.2d at 588.

However, it is commonly recognized that whether an employee is acting within the scope of his employment is a question of fact to be decided by the jury. *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334. Only when reasonable minds can come to but one conclusion does the issue regarding scope of employment become a question of law. As the Supreme Court of California has recently stated, "[o]rdinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when 'the facts are undisputed and no conflicting inferences are possible.' * * * " *Mary M. v. Los Angeles* (1991), 54 Cal.3d 202, 213, 285 Cal.Rptr. 99, 105, 814 P.2d 1341, 1347, quoting *Perez v. Van Groningen & Sons, Inc.* (1986), 41 Cal.3d 962, 968, 227 Cal.Rptr. 106, 109, 719 P.2d 676, 679.

The willful and malicious character of an employee's act does not always, as a matter of law, remove the act from the scope of employment. *Stranahan Bros. Catering Co. v. Coit* (1896), 55 Ohio St. 398, 410, 45 N.E. 634, 637; *Wiebold Studio, Inc. v. Old World Restorations, Inc.* (1985), 19 Ohio App.3d 246, 19 OBR 398, 484 N.E.2d 280. "When an employee diverts from the straight and narrow performance of his task, the diversion is not an abandonment of his responsibility and service to his employer unless his act is so divergent that its very character severs the relationship of employer and employee. * * * " *Id.* at 250, 19 OBR at 403, 484 N.E.2d at 287, citing *Amstutz v. Prudential Ins. Co. of America* (1940), 136 Ohio St. 404, 16 O.O. 572, 26 N.E.2d 454. See, also, *Thomas v. Ohio Dept. of Rehab. & Corr.* (1988), 48 Ohio App.3d 86, 548 N.E.2d 991, wherein the court held that a corrections officer's unjustified use of force against an inmate does not automatically take his actions outside the scope of his employment, and the state may be held liable under the theory of *respondeat superior.*

The issue before this court in the instant case is one of first impression in that it involves the application of *respondeat superior* to the actions of an off-duty police officer. Hence we will look to other jurisdictions for guidance. In *Hill v. Mitchell* (E.D.Mich.1986), 653 F.Supp. 1194, a Michigan federal court held that the plaintiff had pled facts which would allow a common-law tort claim against the city of Detroit. The complaint alleged that two off-duty city police officers shouted racial epithets at the victim and his friends, threw

rocks at them and chased them, and that eventually one of the officers pulled his handgun and shot the victim. Relying on Restatement of the Law 2d, Agency (1958), Section 229,[4] the *Hill* court concluded that a jury could find that the officers' conduct was within the scope of employment.

The Supreme Court of Louisiana has held that under the doctrine of *respondeat superior,* the city of New Orleans could be liable for the actions of two off-duty police officers. In *Cheatham v. New Orleans* (La.1979), 378 So.2d 369, two off-duty police officers had begun to manhandle a young shoeshine boy when a bystander attempted to intervene on behalf of the youth. The officers punched and kicked the bystander, with one officer eventually pulling out a gun and killing the man. The court held that although procedural considerations did not require it to resolve the scope-of-employment issue, "the evidence in the record more likely than not established that the officers' conduct *was* in the course and scope of their employment. * * *" (Emphasis *sic.*) *Id.* at 375, fn. 7.

In *Graves v. Wayne Cty.* (1983), 124 Mich.App. 36, 333 N.W.2d 740, the plaintiff observed his girlfriend at a restaurant with an off-duty deputy sheriff. A scuffle ensued and the deputy attempted to place the plaintiff under arrest. While the plaintiff was retreating, the deputy shot him in the back. Relying in part on Restatement of the Law 2d, Agency (1958), Section 219(2)(d),[5] the court held that the employer county could be held liable for the

---

4. Section 229 of the Restatement provides:
   "(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.
   "(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
   "(a) whether or not the act is one commonly done by such servants;
   "(b) the time, place and purpose of the act;
   "(c) the previous relations between the master and the servant;
   "(d) the extent to which the business of the master is apportioned between different servants;
   "(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
   "(f) whether or not the master has reason to expect that such an act will be done;
   "(g) the similarity in quality of the act done to the act authorized;
   "(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
   "(i) the extent of departure from the normal method of accomplishing an authorized result; and
   "(j) whether or not the act is seriously criminal."

5. Section 219(2)(d) of the Restatement provides:
   "A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

actions of the deputy sheriff. The court thus reversed summary judgment granted in favor of the county, and concluded that a question of fact was presented as to whether the officer's conduct was within the scope of his employment. Hence, while various analytical approaches were utilized by the courts in *Hill, Cheatham,* and *Graves,* all three courts held that the evidence supported a finding that the off-duty police officers' conduct was within the scope of their employment. Therefore, liability was premised upon the doctrine of *respondeat superior.*

The Supreme Court of California has recently upheld a jury verdict premised on *respondeat superior,* finding the city of Los Angeles liable for the actions of one of its police officers who committed a forcible rape while on duty. In *Mary M. v. Los Angeles, supra,* 54 Cal.3d 202, 285 Cal.Rptr. 99, 814 P.2d 1341, an on-duty police officer, in uniform and driving a police cruiser, observed a woman driving erratically and detained her. The woman had been drinking and began to plead with the officer not to take her to jail. The officer then drove her home in the cruiser. Once inside the house, the officer stated that he expected "payment" for taking the woman home rather than to jail. A struggle ensued, but the victim submitted to the officer after he threatened to take her to jail. The court examined both the traditional test for *respondeat superior* liability and the three policy objectives underlying the imposition of such liability. These three objectives are: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury. * * *" (Citations omitted.) *Id.* at 209, 285 Cal.Rptr. at 101, 814 P.2d at 1343. The court then concluded that a jury could reasonably find that the officer's conduct was within the scope of his employment, and that the policy objectives underlying *respondeat superior* supported imposition of liability on the city.

Although the police officer in *Mary M.* was on duty, we find the case to be instructive. It is worth noting that the officer's use of authority was a major premise for the court's holding. As the court stated, "[t]aking advantage of his authority and control as a law enforcement officer, he ordered plaintiff into his car and transported her to her home, where he threw her on a couch. When plaintiff screamed, Sergeant Schroyer again resorted to his authority and control as a police officer by threatening to take her to jail. Based on these facts, the jury could reasonably conclude that Sergeant Schroyer was

---

"* * *

"(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation."

acting in the course of his employment when he sexually assaulted plaintiff."
*Id.*, 54 Cal.3d at 221, 285 Cal.Rptr. at 110, 814 P.2d at 1352.

## III

Keeping the above case law and the principles underlying *respondeat superior* liability in mind, we shall now examine the facts of this case to determine whether a question of fact has been raised regarding Lyles' employment status, which would preclude summary judgment. In doing so, we must be mindful that " '[s]ummary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. * * * ' " (Citations omitted.) *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 2, 433 N.E.2d 615, 616, quoting *Vetovitz Bros., Inc. v. Kenny Constr. Co.* (1978), 60 Ohio App.2d 331, 332, 14 O.O.3d 292, 293, 397 N.E.2d 412, 414.

In the present case, the evidence presented by way of depositions and affidavits establishes that Lyles was off duty driving to his employment and was involved in an automobile accident with a parked car. Evidence was presented that when an off-duty police officer is involved in an automobile accident, a supervisor must be called to investigate the accident on behalf of the department. Hence, reasonable minds could conclude that Lyles was in the scope of his employment when he told Osborne to leave the area, because he was assuming control over the scene of the accident. Indeed, as a police officer, Lyles had a duty to act and could be viewed as attempting to do so when he ordered Osborne to leave the scene of the accident.

Regulation 5.00 of the Cleveland Police Department requires that a police officer "[p]rotect life and property, prevent crime, detect, arrest and prosecute offenders, preserve the public peace and enforce laws and ordinances *at all times.*" (Emphasis added.) Additionally, Regulation 5.03 provides that an officer shall "[b]e considered to be on duty at all times, for purposes of discipline." Lieutenant Lloyd L. Bratz, Commanding Officer of the Cleveland Police Academy, testified that "[w]e would hope that any time there is a criminal event taking place that a Cleveland police officer would intercede, whether that individual is on duty or off duty. * * * [T]hat particular status really doesn't matter." Bratz also stated that recruits are taught to intercede in criminal actions while off duty. Moreover, Captain Malloy and Sergeant Manocchio both testified that whenever an off-duty officer is involved in an accident, the officer's supervisor must be notified and that supervisor is to

conduct an investigation. Hence, reasonable minds could conclude that Lyles had a responsibility to assume control of the scene and then inform his supervisor of the accident. By assuming control over the scene, Lyles was also " 'facilitat[ing] or promot[ing]' " his employer's business. *Byrd v. Faber, supra,* 57 Ohio St.3d at 58, 565 N.E.2d at 587. Preserving the scene of an accident to allow investigation and keeping the public peace unquestionably promotes and facilitates the business of the Cleveland Police Department.

Additional evidence in the record also suggests that after Osborne refused Lyles' command to step back from the accident, Lyles himself was assaulted. According to Lieutenant Maxwell's testimony, Lyles claimed he was assaulted and thereafter attempted to effectuate an arrest. Officer Bazley, who was on the scene, corroborated this scenario by stating that Lyles himself told her he had made an arrest. Therefore, reasonable minds could conclude that Lyles was attempting to place Osborne under arrest, and that as such he was within the scope of his employment.

### Conclusion

The record demonstrates that material questions of fact exist as to whether Officer Lyles was within the scope of his employment on the night in question. We hold that in a summary judgment proceeding, whether an employee is within the scope of his or her employment is generally a question of fact to be determined by the trier of fact. Additionally, we find that reasonable minds could conclude that Lyles had a duty to take charge of the accident scene, was attempting to do so, and in the process had attempted to or did make an arrest. Moreover, a jury could reasonably conclude that Lyles was authorized to assume command of the situation and take whatever steps were necessary to effectuate proper police procedure. In this context, a question of fact exists as to whether Lyles acted within the scope of his employment when he: (1) attempted to assume control of the accident scene, and (2) attempted to complete or completed an arrest. We therefore reverse the judgment of the court of appeals and remand this case to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

SWEENEY and DOUGLAS, JJ., concur.

WRIGHT and H. BROWN, JJ., concur in judgment only.

MOYER, C.J., and HOLMES, J., dissent.

HOLMES, J., dissenting. I respectfully dissent from the majority opinion because it adopts a new and distorted legal standard within the law of agency

which, in effect, holds that the acts of an off-duty police officer are presumptively within the course of his employment when he announces that he is a police officer. The majority adopts the legal standard that since police officers are authorized to intervene in criminal events, and to maintain the peace, even when off duty, the use of their weapons and the use of force against others are presumptively in the course and scope of their employment. In effect, the majority has adopted a police-officer exception to agency law which may have the effect of discouraging municipalities from training their police officers to intercede in criminal events that they observe while off duty. I believe adopting this standard in Ohio is contrary to the law currently followed in Ohio, and is unsound public policy.

Ordinarily, acts committed by an employee when he is off duty are not within the scope of his employment, and the employer is not liable for these acts. An employer is not liable for an employee's tortious acts when such acts are not performed to further the employer's business and are motivated by the employee's personal malice toward the injured party. Moreover, there is no liability in such situations even though the employee might be on duty at the time. It is of little consequence that the employee may use instruments provided by the employer or the indicia of his employment to commit the willful and malicious act. See *Cooperman v. Univ. Surgical Assoc., Inc.* (1987), 32 Ohio St.3d 191, 513 N.E.2d 288; *Schulman v. Cleveland* (1972), 30 Ohio St.2d 196, 59 O.O.2d 196, 283 N.E.2d 175.

For purposes of our discussion here, the seminal Ohio case on the issue of an employer's vicarious liability for the assault by an employee upon a third person is *Little Miami RR. Co. v. Wetmore* (1869), 19 Ohio St. 110, wherein a railroad employee assaulted a passenger. The *Wetmore* court reversed a jury verdict against the employer, stating:

"It seems to us that the assault was in no way calculated to facilitate or promote the business for which the servant was employed by the master; nor could it have been supposed to be, or intended as, an act done with that view or object. It is not a case of excess of force and violence in executing the authority of the master, but rather an act beyond such authority and foreign to the objects of the employment. * * *" *Id.* at 132.

The *Wetmore* court went on to adopt two sound principles of agency. First, " * * * [b]eyond the scope of his employment, the servant is as much a stranger to his master as any third person, and the act of the servant not done in the execution of the service for which he was engaged cannot be regarded as the act of the master." *Id.* at paragraph one of the syllabus. Also, the *Wetmore* court stated that it is immaterial to the issue of liability that an

employee uses an instrument provided by the employer, in connection with the employer's business, to injure another. *Id.* at paragraph two of the syllabus.

As a limited exception to the general rule that acts committed by an off-duty employee are not within the scope of employment, there are instances where appropriate acts of an off-duty police officer may be found to be within the scope of employment. For example, off-duty police officers, as noted *supra* and by the majority, may intercede in criminal events that they observe while off duty. Police officers are trained and encouraged to do what is necessary to halt a crime in progress or to enforce the law in aid of a citizen in need, and this is to be done whether on or off duty. However, for the acts of the off-duty police officer to be found to be within the scope of his employment they must be reasonably within the scope of those activities which he was employed to perform for the police department—basically, these are to enforce the law and preserve the peace. I would add that an officer must carry out such duties with the appropriate reasonableness and care, and not exert an undue or unnecessary force to accomplish his official acts. Police officers, on or off duty, may use force in the execution of their appointed tasks. However, the use of force must be limited to instances where it seems reasonably necessary under the surrounding circumstances to accomplish a legitimate law enforcement purpose.

In *Wolf v. Liberis* (1987), 153 Ill.App.3d 488, 106 Ill.Dec. 411, 505 N.E.2d 1202, an Illinois appellate court addressed a case analogous to the one at bar where an officer negligently caused the death of a civilian as the result of a traffic collision. The *Wolf* court held:

" * * * Although the general orders of the Chicago Police Department provide that policemen are 'on duty' 24 hours a day, that fact does not necessitate the conclusion that all acts taken by an off-duty police officer are deemed to be in the performance of his duties as a police officer. * * * [Citations omitted.]

"Liability will not be imposed on the municipality when the conduct of the off-duty police officer is so reckless and outrageous that it is deemed to be outside the scope of employment. In that situation, summary judgment is proper. Examples of conduct outside the scope of employment have included a police officer's intentionally threatening to kill and then killing a complainant's son so as to cause the complainant great emotional distress (*Nelson v. Nuccio* [1971], 131 Ill.App.2d 261, 268 N.E.2d 543, *appeal denied* [1971], 47 Ill.2d 590); off-duty police officers falsely arresting, falsely imprisoning, and sexually assaulting a complainant, even though their status as off-duty police officers was what enabled them to retain custody of the complainant (*Gambling v. Cornish* [N.D.Ill.1977], 426 F.Supp. 1153); and an off-duty police-

man's breaking down the door of a neighbor's apartment and shooting the occupant in the mistaken belief that he was entering his own apartment and shooting a burglar. *Dzing v. City of Chicago* (1980), 84 Ill.App.3d 704, 406 N.E.2d 121, *appeal denied*, 81 Ill.2d 590." *Wolf, supra*, 153 Ill.App.3d at 492–493, 106 Ill.Dec. at 415, 505 N.E.2d at 1206; see, also, *Dist. of Columbia v. Coron* (D.C.App.1986), 515 A.2d 435 (district not liable for off-duty officer's assault where he was dressed in civilian clothing and driving his own vehicle on a purely personal venture at the time of the incident); *Strachan v. Kitsap Cty.* (1980), 27 Wash.App. 271, 616 P.2d 1251; *Fitzgerald v. McCutcheon* (1979), 270 Pa.Super. 102, 410 A.2d 1270.

In reviewing the specific facts of this case, it is clear that there is absolutely no evidence that while off duty, Officer Lyles' acts were motivated in whole or in part by legitimate law enforcement objectives furthering the purposes or interests of his employer, the city of Cleveland. In the absence of evidence from which reasonable minds could conclude that Lyles, although off duty, was acting within the course and scope of his employment when he performed the alleged tortious acts, summary judgment for the city of Cleveland was appropriate.

The pertinent facts in this case are that on February 13, 1984, the appellants Donald Osborne and Jesus Figueroa were in a Cleveland bar together. Having been alerted to the fact that something may have happened to Figueroa's car, both Osborne and Figueroa went outside where Figueroa's car had been parked and observed that another auto had run into it, causing extensive damage. As Osborne approached Figueroa's car, the driver of the other automobile, Officer Lyles (then off duty) got out of his car and yelled at Osborne to leave the premises. According to Osborne's testimony, Lyles was not in police uniform, but was dressed in a T-shirt and slacks. Further, Osborne testified that Lyles twice told him to "get the fuck out of here." When Osborne refused to leave, Lyles swung at Osborne with his fist. Osborne backed away, and Lyles went after him. Then they both swung at each other, and began scuffling. Next, Lyles slammed Osborne into the car and pulled a pistol out, stating, "Cleveland Police." Osborne, not knowing whether his attacker was in reality a police officer or "just some crazy person with a gun," ran towards the bar. Lyles struck Osborne in the shoulder with the gun as Osborne ran by him. Lyles chased Osborne into the bar and with his badge in his hand, put the pistol to Osborne's head and forced him to lie upon the floor, face down at gunpoint. Lyles was yelling and screaming at Osborne to "stay on the fucking floor," and at Figueroa to "back off." Figueroa, also not realizing that Lyles was an off-duty officer, called the Cleveland Police and told them that they were being molested by a "man with a gun." The police ultimately arrived and, not immediately recognizing that

Lyles was an off-duty officer, almost shot him. However, one of the responding officers recognized Lyles, and a shooting was avoided.

Although the record does not show that Lyles was disciplined for his behavior, there was evidence that he was laid off from the police force for approximately three months.

The contortions to which the majority subjects the facts in this case, in an effort to make the facts fit its own theory, should convince the reader that the conclusions reached by the lower courts were correct in determining there was no evidence in this case from which reasonable minds could determine that Lyles was in the scope of his employment.

As the majority has suggested, it is true that generally an off-duty officer would have the responsibility to stop and assume control over the scene of an accident, and to do those things that are necessary under the circumstances. However, this case is not an instance where an off-duty officer had stopped at the scene of an accident involving others. Additionally, this is not the case of an off-duty officer taking charge of an accident scene to assist injured persons and to direct traffic. Conversely, the acts of the off-duty officer here were self-serving and not for the purpose of preserving the public peace or serving the public good. Here, the accident scene was occasioned by the off-duty officer's own apparent negligence in losing control of his vehicle. Obviously, when Lyles said to Osborne to "get the fuck out of here," and advanced upon him throwing punches, Lyles was not taking necessary and proper police action. Also, when Lyles slammed Osborne against the car, and then pointed a pistol at him, such actions could not reasonably be claimed to be within police department rules, even though during such scuffling Lyles stated, "Cleveland Police." Nor can it be reasonably asserted that appropriate police procedure was being carried out when Lyles chased Osborne into the bar, striking him on the way, and then placing the gun to Osborne's head and demanding that he go to the floor face down, and screaming "stay on the fucking floor."

The evidence in this case is that Michael Lyles, while off duty from his employment with the city of Cleveland, apparently carried out an unprovoked assault involving the appellants. There was no evidence that Lyles' attack was motivated by legitimate law enforcement objectives on behalf of the city of Cleveland. Following the appropriate law of *respondeat superior* in this case, a municipality is liable only for those acts of an off-duty policeman that fall within the scope of his employment, specifically, those acts he performs to enforce the law and preserve the peace. Liability will not be imposed on the municipality when the conduct of the off-duty officer is so reckless and

outrageous that it is deemed to be outside the scope of his employment. In that situation, summary judgment is proper. See *Wolf v. Liberis, supra.*

For the reasons stated above, I submit the court of appeals correctly affirmed the trial court's entry of summary judgment for the appellee, city of Cleveland.

MOYER, C.J., concurs in the foregoing dissenting opinion.