OPINION
{¶ 1} This is an appeal from a summary judgment for an insurer in an action for declaratory judgment brought to determine insurance coverage.
 {¶ 2} The policy in issue is a policy of liability insurance that provides express uninsured/underinsured motorist coverage. ("UM/UIM"). The policy was issued by Defendant-Appellee, Erie Insurance Company ("Erie"). The policy contains the following designation of the name and address of the named insured:
 "GRAND FLORAL STATION THOMAS KELLEY D/B/A 4618 N DIXIE DR DAYTON, OH 45414-4606"
 {¶ 3} The complainants in the declaratory judgment action were Plaintiffs-Appellants, Keith and Linda Kelley. While the Erie policy was in effect their daughter, Jessica, was seriously injured in a single-car accident. The car was owned by Keith Kelley. Jessica was a passenger in the car, which was operated by Zachary Short. Jessica died of her injuries six days later. For purposes of this action it is stipulated that Jessica Kelley's injuries and death were a proximate result of Zachary Short's negligence.
 {¶ 4} Short's insurer paid policy limits to settle Keith and Linda Kelley's claims for injuries and losses arising from their daughter's death. The Kelleys then sought additional damages under the UM/UIM coverage the Erie policy pvoides. Erie declined coverage. The Kelleys then commenced an action asking the court to (1) declare that they are due coverage on their claims from Erie and (2) to find that Erie acted in bad faith when it denied their claim.
 {¶ 5} After its responsive pleadings were filed, Erie moved for summary judgment. Erie argued that neither Keith nor Linda Kelley is a named insured entitled to UM/UIM coverage under its policy.
 {¶ 6} The Kelleys filed a motion contra, supported by affidavit of Thomas Kelley, which states:
 {¶ 7} "1. The florist business presently known as Grand Floral Station, Inc. was started in approximately 1945 by my father. Both my brother Keith and I assisted in that business as we grew up.
 {¶ 8} "2. In 1972 I formed a partnership with my brother Keith in the business that was then known as Aloha Flowers. Keith and I were equal partners at that time and, in fact, filed a partnership certificate in Montgomery County, Ohio, in July 1972.
 {¶ 9} "3. In March of 1978, Keith and I incorporated that partnership forming Aloha Flowers, Inc. On April 4, 1978, fifty (50) shares of stock in Aloha Flowers Inc. were issued to Tom Kelley and fifty (50) shares of stock in Aloha Flowers Inc were issued to Keith Kelley. There have been no subsequent shares issued to either myself or Keith, or any other individual. Keith and I have been the only owners and participants in this business from its inception.
 {¶ 10} "4. In October 1988, the corporate name was changed to Grand Floral Station, Inc. At that point in time, there was no change in the ownership of the stock. The business continues to this date operating as Grand Floral Station, Inc.
 {¶ 11} "5. From the time that my father owned and ran this business, our insurance was through the Lusenhop Insurance Agency, now known as Group 3 Insurance Agency Inc., located at 56 Marco Lane, Centerville, Ohio 45458. This agency secured insurance coverages with various insurance companies, and most recently, with Erie Insurance Company since approximately 1999. When Group 3 Insurance Agency Inc. issued the policy with Erie, I notified them that the coverage should not have been issued under the name of Grand Floral Station DBA Tom Kelley. I advised them that the policy should have been issued in the name of Grand Floral Station, Inc., a corporation. I spoke with an agent by the name of Rick G. Baughn in August of 1999 and advised him that the business has been incorporated since 1978 and had never been a sole proprietorship owned by myself.
 {¶ 12} "6. As such, the name on the policy is incorrect, and it is the fault of the agency that the name has not been corrected as I suggested.
 {¶ 13} "7. My brother Keith and I are equal shareholders in this corporation, and the fact that my name is on the policy and not his does not reflect the actual business relationship.
 {¶ 14} "8. Keith Kelley's deceased daughter, Jessica Kelley, was a blood relative of Keith Kelley, and a permanent resident of his household up to the time of her fatal car crash.
 {¶ 15} "Further Affiant sayeth naught."
 {¶ 16} The Kelleys argued that because the Erie policy was in fact issued to a corporate entity, the designation of the named insured as it appears in the policy is "confusing," and that the resulting ambiguity entitles Keith Kelley to coverage under the rule of Scott-Pontzer v.Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660.
 {¶ 17} The trial court rejected the Kelleys' contentions and granted Erie's motion. The court found that the designation of the named insured as it appears in the Erie policy is not confusing or ambiguous. Further, because the policy identifies not a corporation but a different individual doing business as a sole proprietorship as the named insured, coverage is not extended to employees of the enterprise under the rule ofScott-Pontzer. Finally, because the unambiguous identification of the named insured does not include Keith Kelley, he and Linda Kelley are not entitled to the UM/UIM coverage the Erie policy provides.
 {¶ 18} The Kelleys filed a timely notice of appeal. They present a single assignment of error, which states:
 {¶ 19} "The Trial Court Erred In Granting The Defendants/appellees' Motion For Summary Judgment Finding That The Plaintiffs/appellants Were Not Insureds Under The Insurance Policy."
 {¶ 20} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. Morrisv. First National Bank Trust Co. (1970), 21 Ohio St.2d 25. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. Osborne v. Lyles (1992), 63 Ohio St.3d 326. Further, the issues of law involved are reviewed de novo. Nilavar v. Osborn (1998),127 Ohio App.3d 1.
 {¶ 21} In Scott-Pontzer the Supreme Court held that a policy of automobile liability insurance issued to a corporation in its name is, at least with respect to its UM/UIM provisions and the law that applies to coverage in that form, inherently ambiguous with respect to the persons who are entitled to coverage. Therefore, a corporate employee is entitled to any UM/UIM coverage such a policy provides. Id. We have held that when policies issued to corporate entities additionally identify a person or persons to whom the coverage specifically extends, the ambiguity is cured and the coverage provided additionally extends only to the person(s) identified. White v. American Manufacturer's Mut. Ins. Co. (Aug. 9, 2002), Montgomery App. No. 19206, 2002-Ohio-4125.
 {¶ 22} We agree with the trial court that the predicate ambiguity which Scott-Pontzer contemplates is not present in the Erie policy's designation of the named insured. The entity identified is not a corporate entity but an individual maintaining a sole proprietorship. Keith Kelley is not within that express designation, which is clear and unambiguous. Therefore, Scott-Pontzer has no application to the designation of the named insured as it appears in the Erie policy.
 {¶ 23} The complaint for declaratory relief and the arguments and evidence the Kelleys presented required the court to determine a further question, however. That question is whether the parties' meeting of the minds on which their contract was formed contemplated coverage terms different from the designation of the named insured as that appears in their executed contract. That presents an issue of fact, one on which the court necessarily was not limited to the writing before it in order to determine.
 {¶ 24} "Declaratory judgment procedure may not be used to determine an isolated question of fact, but the fact that a controversy turns upon questions of fact does not withdraw it from the court's jurisdiction. Legal consequences flow from the existence of facts, and it is the province of the court to ascertain such facts in order to determine the legal consequences. In such circumstances, the court may exercise its discretion in determining whether or not to entertain the action. Therefore, where a determination of facts is necessary either to a finding as to the construction or validity of a contract or to a declaration of rights, status, or other legal relations, the determination can be made in a declaratory judgment proceeding, in the same manner as issues of fact are tried and determined in other civil actions in the court in which the action is pending. That is, there is a right to trial by jury in an action for declaratory judgment in cases in which the right otherwise exists, and a party who makes a timely demand for a jury trial in a declaratory judgment action in which a question of fact is to be decided is entitled to trial by jury on that question; denial of trial by jury in such a case would be reversible error." 35 Ohio Jurisprudence 3d, Declaratory Judgments, Section 15, at pp. 22-23.
 {¶ 25} A court may not go beyond the four corners of a written instrument when asked to construe the meaning of a term therein that is clear and unambiguous. Then, the term is conclusively presumed to reflect the parties' intent. However, when a claim is made that the parties when they formed their contract intended a result wholly different from what the term unambiguously expresses, determination of that question necessarily requires the court to look beyond the contract's written terms. Even in a declaratory judgment action brought pursuant to R.C.2721.03, the court may do that. Further, after construing which version reflects what the parties' intended, the court may grant appropriate relief either affirmative or negative in form in order to enforce it. R.C. 2721.02.
 {¶ 26} A court deciding a motion for summary judgment must construe the evidence before it most strongly in favor of the party against whom the motion is made. Civ.R. 56(C). Thomas Kelley's testimony, if believed, supports a finding that the parties intended the coverage the Erie policy provides to extend to the corporate entity, Grand Floral Station, Inc. not to Thomas Kelly, either personally or as a proprietorship. If the court so finds, Keith Kelley may be entitled to coverage under the rule of Scott-Pontzer, if Thomas Kelley's description of him as an "owner and participant" in the business is construed to equate his status with an employee's. Within the broad terms thatScott-Pontzer sets out, and per Civ.R. 56(C), we construe it to have that meaning and effect for purposes of summary judgment.
 {¶ 27} Thomas Kelley's evidence might further support a finding that, because he relied on its agent's representations that a correction would be made, Erie may be estopped from enforcing the policy's written terms which contradict those to which the parties had actually agreed. That issue is not before us, however, inasmuch as it depends on findings of fact not yet made.
 {¶ 28} These propositions present genuine issues of material fact for determination. Therefore, the trial court erred when it granted Erie's motion for summary judgment on the Kelleys' coverage claim.
 {¶ 29} Erie has moved to strike two documents attached to the Kelleys' brief on appeal because they were not before the trial court. One is a copy of the declarations page of the Erie policy, marked Exhibit B. The entire policy was attached to Erie's complaint. Civ.R. 56(C) permits the court to consider the pleadings. Exhibit B was therefore properly before the trial court for purposes of ruling on Erie's summary judgment motion. The other document, marked Exhibit A, purports to be the declarations page of a prior policy issued by a different insurer. It was not before the trial court. Erie's motion to strike is granted with respect to Exhibit A but denied with respect to Exhibit B.
 {¶ 30} Erie further urges us that, should we reverse the summary judgment in its favor with respect to the Scott Pontzer claim, as we have, we should then go on to rule on the other branch of Erie's summary judgment motion, which involves the Kelleys' bad faith claim. We may decide an issue on grounds different from those determined by the trial court when their evidentiary basis was adduced in the trial proceeding.State v. Peagler (1996), 76 Ohio St.3d 496. However, we find that the evidence required to resolve the bad faith claim was not fully adduced, so Peagler doesn't allow us to reach it.
 {¶ 31} The assignment of error is sustained. The judgment from which the appeal was taken will be reversed and the case remanded for further proceedings.
FAIN, P.J. and YOUNG, J., concur.