MASONIC HEALTH CARE, INC., Appellee,

v.

FINLEY et al., Appellants.

[Cite as *Masonic Health Care, Inc. v. Finley,* 176 Ohio App.3d 529, 2008-Ohio-2891.]

Court of Appeals of Ohio,
Second District, Clark County.

Nos. 07CA107 and 07CA108.

Decided June 13, 2008.

Daniel C. Harkins and Mark D. DeCastro, for appellee.

Miguel A. Pedraza Jr., for appellant Andrea Wallace.

Joseph M. Juergens, for appellant James Finley.

GRADY, Judge.

{¶ 1} On July 22, 2005, the Municipal Court of Clark County granted a motion for summary judgment filed by the plaintiff, Masonic Health Care, Inc. ("MHC"), on claims for relief that MHC brought pursuant to R.C. Chapter 1336, the Ohio Uniform Fraudulent Transfer Act, against the defendants, James Finley and Andrea Wallace. The court found that transfers of property to those two defendants made by their mother, Juanita Finley, were committed with an actual intent to defraud MHC on a debt Juanita owed MHC. R.C. 1336.04. The court had previously granted a default judgment against Juanita and for MHC for the amount of the debt. The court ordered the transfers voided pursuant to R.C. 1336.07, to the extent necessary to satisfy Juanita's debt to MHC, and ordered James and Andrea to deposit funds necessary to pay the debt into Juanita's account within 60 days. The court also overruled motions for summary judgment that those defendants had filed.

{¶ 2} James filed a timely notice of appeal (case No. 07CA107). Andrea did likewise (case No. 07CA108). The two appeals have been consolidated for review.

{¶ 3} Juanita Finley was born on April 16, 1928. She has three adult children: James Finley, Andrea Wallace, and Andrew Finley.

{¶ 4} On December 14, 2002, Juanita was admitted to MHC's nursing home facility in Springfield. She executed a resident agreement that obligated her to pay for the services MHC would provide, at a rate of $172 per day. James, who had cared for his mother for a number of years, was identified on the admission forms as his mother's "responsible party."

{¶ 5} Juanita remained a resident of MHC's facility until she was discharged on April 1, 2003. Because her Medicare coverage was exhausted while she was a resident, Juanita owed MHC $19,352.62 when she was discharged. She subsequently made payments on her account that reduced the outstanding balance to $11,792.63, which remains due and owing.

{¶ 6} On July 29, 2003, MHC commenced the action underlying this appeal. MHC sought a judgment against Juanita for the $11,792.63 she owed. MHC also sought judgments against her three children, alleging that transfers of money and property that Juanita had made to them were done with an intent to defraud MHC, and asking the court to void these transfers to the extent necessary to pay MHC what it is owed.

{¶ 7} MHC's claims for relief against James, Andrea, and Andrew relied on R.C. 1336.04, which provides:

{¶ 8} "(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

{¶ 9} "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

{¶ 10} "(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:

{¶ 11} "(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

{¶ 12} "(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

{¶ 13} "(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:

{¶ 14} "(1) Whether the transfer or obligation was to an insider;

{¶ 15} "(2) Whether the debtor retained possession or control of the property transferred after the transfer;

{¶ 16} "(3) Whether the transfer or obligation was disclosed or concealed;

{¶ 17} "(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

{¶ 18} "(5) Whether the transfer was of substantially all of the assets of the debtor;

{¶ 19} "(6) Whether the debtor absconded;

{¶ 20} "(7) Whether the debtor removed or concealed assets;

{¶ 21} "(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

{¶ 22} "(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

{¶ 23} "(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

{¶ 24} "(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."

{¶ 25} MHC sought relief against James, Andrea, and Andrew pursuant to R.C. 1336.07. That section provides:

{¶ 26} "(A) In an action for relief arising out of a transfer or an obligation that is fraudulent under section 1336.04 or 1336.05 of the Revised Code, a creditor or a child support enforcement agency on behalf of a support creditor, subject to the limitations in section 1336.08 of the Revised Code, may obtain one of the following:

{¶ 27} "(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the claim of the creditor."

{¶ 28} Responsive pleadings were filed, and subsequent to that the parties filed motions for summary judgment. The following evidence was offered in support of MHC's motion regarding its claims for relief:

{¶ 29} On November 25, 2002, less than three weeks before she signed her resident agreement with MHC upon her admission, Juanita executed a quitclaim deed in favor of Andrew, relinquishing her interest in a residential property in Lebanon, Ohio, they jointly owned. The deed states that the conveyance was "for valuable consideration paid."

{¶ 30} While she was a resident of MHC's nursing home, Juanita made two gratuitous transfers of cash totaling $95,422.33 to Andrea.

{¶ 31} Subsequent to her discharge on April 1, 2003, Juanita made two gratuitous transfers to James. One was cash in the amount of $57,000. The other was 736 shares of General Electric stock having a value in excess of $21,000.

{¶ 32} Subsequent to her discharge from MHC, Juanita incurred obligations for health-care services with two other providers. Neither was paid, and both had obtained judgments against her.

{¶ 33} The trial court found on the evidence before it that no genuine issue of material fact exists, that reasonable minds could only conclude that Juanita acted

with an actual intent to defraud MHC when she made the transfers to James and Andrea, and that without receiving anything of equivalent value from them, Juanita was then engaged in a transaction with MHC for which her remaining assets were unreasonably small in relation to the debt she owed MHC. Those findings addressed the requirements of R.C. 1336.04(A)(2)(a).

{¶ 34} With respect to an actual intent to defraud, the court found that at least five of the "badges of fraud" in R.C. 1336.04(B)(1) through (11) were present: the transfers Juanita made were to an insider, Juanita transferred substantially all of her assets, she received no consideration, she became insolvent after the transfers were made, and the transfers were made while Juanita was receiving a substantial debt.

{¶ 35} The trial court granted summary judgment for MHC on its claims for relief against James and Andrea and ordered relief against them and in favor of MHC pursuant to R.C.1336.07(A)(1). The court denied MHC's motion with respect to its claim for relief against Andrew, finding that the reference to "valuable consideration paid" in the quitclaim deed Juanita executed in favor of Andrew presented a genuine issue of material fact concerning whether that transfer was gratuitous. The court also denied the motions for summary judgment that James and Andrea had filed.

{¶ 36} MHC subsequently dismissed its claim for relief as to Andrew. Following that, James and Andrea filed timely notices of appeal from the summary judgments against them.

### *James Finley's Appeal*

{¶ 37} "Trial court erred in granting summary judgment to plaintiff-appellee, Masonic Health Care, Inc., and denying the motion for summary judgment of James M. Finley."

{¶ 38} James argues that the trial court erred when it granted summary judgment against him on MHC's claim for relief because he had no obligation to pay his mother's debt to MHC and did not promise to pay or otherwise assume such an obligation because he was identified as the "responsible party" when Juanita was admitted to MHC's nursing home.

{¶ 39} James misapprehends the rule of law on which MHC's claim for relief relies and that the trial court applied. Having found that Juanita's transfers of cash and stock to James constituted fraudulent transfers pursuant to R.C. 1336.04, the court voided those transfers pursuant to R.C. 1336.07, ordering James to restore the property he received to his mother, making it available to satisfy her indebtedness to MHC on the default judgment it obtained. No

finding that James was in any way obligated on his mother's debt to MHC was necessary in order to grant that relief, and the court made no such finding.

{¶ 40} The assignment of error is overruled.

### Andrea Wallace's Appeal

{¶ 41} "The trial court erred when it granted MHC summary judgment and denied Andrea Wallace's motion for summary judgment because Andrea met her burden as the non-moving and moving party, respectively."

{¶ 42} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825. Further, the issues of law involved are reviewed de novo. *Nilavar v. Osborn* (1998), 127 Ohio App.3d 1, 711 N.E.2d 726.

{¶ 43} Wallace presents two arguments, one of which is supported by four separate contentions. They will be reviewed in that order.

{¶ 44} "A. MHC failed to establish that Juanita Finley's transfer of assets to Andrea Wallace was fraudulent under the Ohio Uniform Fraudulent Transfer Act."

{¶ 45} In order to be fraudulent for purposes of R.C. 1336.04(A)(1), a transfer of assets by a debtor must be made "[w]ith an actual intent to hinder, delay, or defraud any creditor of the debtor." R.C. 1336.04(A)(2) specifies that the transfer must have been made "[w]ithout [the debtor's] receiving a reasonably equivalent value in exchange for the transfer * * *," if either of two alternatives apply.

{¶ 46} Andrea complains that the trial court failed to find that Juanita transferred monies to Andrea "[w]ithout receiving a reasonably equivalent value." R.C. 1336.04(A)(2). That is not correct. The trial court found: "Neither Andrew nor James provided consideration for that which they received."

{¶ 47} Andrea further argues that the trial court erred in considering Juanita's transfers of money and other property to her three children, over a period of six

months, as part of a single transaction or course of conduct for purposes of R.C. 1336.04.

{¶ 48} The trial court did not grant summary judgment against Andrew. The two transfers to Andrea were made in February 2005, while Juanita was a resident of MHC's facility. The transfers to James were in April and May of that year, following Juanita's discharge and while her debt to MHC remained unpaid. The period of the transfers to Andrea and James occurred over a term of but four months.

{¶ 49} R.C. 1336.04(A)(1) applies to "[a] transfer." However, that singular usage does not prohibit courts from considering multiple transfers by the same person that are close in time and similar in character when determining that those transfers were made with an "actual intent" to defraud a creditor, R.C. 1336.04(A)(1), when the result of the aggregate of the transfers is one of those identified in R.C. 1336.04(A)(2). In this instance, that result is that the transferor received no reasonably equivalent value in exchange for the transfers and was at the time engaged in a transaction creating an obligation on the part of the debtor in relation to which her remaining assets were unreasonably small.

{¶ 50} Wallace also argues that the trial court's finding that the transfers to her and to James were part of an overall plan to defraud MHC are not supported by the record because MHC offered no evidence probative of that purpose. We do not agree.

{¶ 51} Circumstantial evidence and direct evidence inherently possess the same probative value and are subject to the same standard of proof. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. From the evidence presented, reasonable minds could only conclude that Juanita's transfers to her two children of substantial assets that would otherwise be available to pay Juanita's debt to MHC, transfers that were close in time and without any consideration, were done for the purpose of defrauding MHC on the obligation that Juanita owed. Furthermore, as the trial court noted, neither recipient offered any evidence that would support a contrary conclusion.

{¶ 52} "1. Juanita's gifts to Andrea did not substantially deplete all of Juanita's assets."

{¶ 53} Andrea argues that because Juanita possessed assets worth $78,000 that she subsequently transferred to James when Juanita made her gifts of $95,422 to Andrea in February 2005, Juanita's remaining assets were not unreasonably small in relation to the $11,792.63 debt she owed MHC, R.C. 1336.04(A)(2)(a), when Juanita transferred assets to Andrea.

{¶ 54} This contention is necessarily rejected on our holding that the trial court could reasonably consider the gifts that Juanita gave her two children in the aggregate of those amounts for purposes of R.C. 1336.04. Those transfers, which occurred between February and May 2003, totaled $173,422. When the underlying action was filed in July 2003, Juanita's $11,792.63 debt to MHC remained unpaid.

{¶ 55} R.C. 1336.04 assumes an obligation to pay debts timely. When a debt remains unpaid, and absent any dispute concerning whether the amount is owed, a presumption arises that the debtor is either unwilling or unable to pay.

{¶ 56} There is no dispute that Juanita owes $11,792.63 to MHC for services she received. There is no contention that Juanita is simply unwilling to pay the debt. A presumption therefore arises that Juanita is unable to pay the debt from assets she owns. In view of Juanita's substantial transfers to Andrea and James of amounts 14 times greater than her debt to MHC, while the debt was being incurred and shortly after, reasonable minds could conclude only that those transfers left Juanita's assets "unreasonably small" in relation to her obligation to MHC. Otherwise, she would have paid it.

{¶ 57} "2. Juanita did not become insolvent shortly after making the gifts to Andrea."

{¶ 58} One of the statutory "badges of fraud" that the trial court applied was that Juanita "was insolvent or became insolvent shortly after the transfer was made." R.C. 1336.04(B)(9). R.C. 1336.02(A)(2) provides: "A debtor who generally is not paying his debts as they become due is presumed to be insolvent."

{¶ 59} There was evidence that two other creditors that had provided nursing services to Juanita beginning in August and November 2003 remain unpaid and that both had obtained judgments against Juanita for amounts she owed them. Juanita's arrangements for those services were made within three to six months after her transfers of assets to Andrea and James. No genuine issue of material fact exists concerning whether Juanita was insolvent, per R.C. 1336.02(A)(2), "shortly after" those transfers were made.

{¶ 60} "3. Juanita's gifts to Andrea were not made shortly after or before Juanita began incurring substantial debt to MHC."

{¶ 61} Juanita was admitted to MHC's facility on December 14, 2002. R.C. 1336.04(B)(10), another of the badges of fraud, permits the court to consider "[w]hether the transfer occurred shortly before or shortly after a substantial debt was incurred." There is evidence that Juanita's Medicare coverage was exhausted as of January 25, 2003, exposing her to an obligation to which she had agreed to pay for services MHC provided thereafter. Juanita's transfers to Andrea Wallace were in February 2003, while MHC was providing services to Juanita at

the rate of $172 per day. Juanita received services provided by MHC until she was discharged on April 1, 2003.

{¶ 62} Wallace takes issue with the trial court's finding that R.C. 1336.04(B)(10) applies, because Juanita's transfers to her two children "were made *while* the mother was incurring a substantial debt, " instead of shortly before or after she incurred it, as that section provides. Because Juanita incurred a new debt for each day MHC provided its services, on this record we see no difference between those two alternatives. Furthermore, in relation to when her Medicare benefits expired, Juanita's transfers to Wallace during the following month occurred shortly after Juanita began to incur a substantial debt.

{¶ 63} "4. MHC could not establish that MHC had threatened Juanita with suit before she made her gifts to Andrea."

{¶ 64} R.C. 1336.04(B)(4), another of the badges of fraud, permits the court to consider "[w]hether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit." The trial court, after identifying the five other badges of fraud that it found apply, wrote: "Additionally, as to Wallace, the transfer was made before or near the time mother had been threatened with suit, as evidenced by the two letters sent to Wallace in late February 2003."

{¶ 65} Wallace argues that any letters addressed to her could not constitute a threat made to sue Juanita, and that even if the letters contained such a threat, there is no evidence that the contents of the letters were made known to Juanita. Wallace also contends that it is unclear from the record whether she received the letters from MHC to which the court referred before the transfers were made to her by her mother.

{¶ 66} MHC argues that Juanita knew or should have known that her bill was not being paid and that there is no evidence in the record that she was unaware of that fact. R.C. 1336.04(B)(4) contemplates actual knowledge of a lawsuit or a threat to sue on the part of the debtor, not constructive notice. Nevertheless, the letters Andrea received from MHC could be proof of actual notice to her mother if two conditions are satisfied.

{¶ 67} First, the letter or letters must have threatened a lawsuit against Juanita. We cannot resolve that question. The parties have not cited the portion of the record where the letters may be found. See App.R. 16(A)(7). Neither have they quoted portions of the letters in their briefs.

{¶ 68} Second, there must be proof that Juanita was made aware of any threat to sue her that MHC made. The parties do not identify any such evidence and neither did the trial court.

{¶ 69} The trial court erred when it concluded, on the record before it, that R.C. 1336.04(B)(4) applies. Nevertheless, we believe the error was harmless.

{¶ 70} R.C. 1336.04(B) permits, but does not require, the court to consider any of the 11 badges of fraud. The trial court found that five of the other badges apply: "(1) the transfers were to insiders; (2) the transfers were substantially all of her assets; (3) there was no consideration received by the mother; (4) who became insolvent shortly after the transfers were made and (5) the transfers were made while the mother was incurring a substantial debt." Wallace did not offer any evidence that might contradict those findings. Neither does Wallace point to any of the remaining statutory badges of fraud which might preponderate in her favor. Therefore, on this record, the trial court's reliance on R.C. 1336.04(B)(4) was harmless error.

{¶ 71} "B. Wallace met her burden as the moving party in her motion for summary judgment and MHC failed to meet its reciprocal burden as the non-moving party."

{¶ 72} In granting MHC's motion for summary judgment, the trial court necessarily also denied the motion for summary judgment that Wallace filed. On appeal, Wallace argues that the same reasons that support a finding that MHC was not entitled to summary judgment also satisfy Wallace's burden of proof on the motion she filed. The latter conclusion does not necessarily follow from the former, however. Furthermore, in restating the contentions we rejected in relation to Wallace's challenge to the summary judgment for MHC, Wallace fails to persuade us that her own motion for summary judgment was improperly denied.

{¶ 73} The assignment of error is overruled. The judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., and FAIN, J., concur.