[Cite as *Buchanan v. Marler*, 2017-Ohio-1438.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JOSEPH BUCHANAN | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JESSIE JAMES MARLER | : | |
| | : | |
| Defendant | : | Case No. 2016CA00186 |
| | : | |
| CROWN OIL FIELD SERVICES, INC. | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Court of Common Pleas, Case No. 2015CV01755

JUDGMENT: Affirmed

DATE OF JUDGMENT: April 17, 2017

APPEARANCES:

For Plaintiff-Appellant

BRIAN L. ZIMMERMAN
229 Third Street, NW
Suite 200
Canton, OH  44702

For Defendant-Appellee

TODD GRAY
LEAH Z. DUGAN
1375 East 9th Street
Suite 2250
Cleveland, OH  44114

*Wise, Earle, J.*

{¶ 1}   Plaintiff-Appellant, Joseph Buchanan, appeals the June 15, 2016 judgment entry of the Court of Common Pleas of Stark County, Ohio, granting summary judgment to Defendant-Appellee, Crown Oilfield Services, Inc.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On June 12, 2015, appellant was operating his motorcycle when he was struck by a pickup truck being operated by Jessie James Marler.  Appellant sustained injuries.

{¶ 3}   On August 25, 2015, appellant filed a complaint against Mr. Marler, his employer (appellee), and others, claiming negligence.  Appellant alleged at the time of the accident, Mr. Marler was operating the pickup truck within the course and scope of his employment.

{¶ 4}   On October 9, 2015, appellant voluntarily dismissed all the other parties, leaving Mr. Marler and appellee in the case.

{¶ 5}   On May 12, 2016, appellee filed a motion for summary judgment, claiming Mr. Marler was not at work, or even going to work, at the time of the accident, and was acting outside the course and scope of his employment; therefore, appellee was not liable for Mr. Marler's conduct.  Appellant filed a memorandum contra on May 18, 2016. Appellee filed an amended reply memorandum on June 7, 2016.  By judgment entry filed June 15, 2016, the trial court agreed with appellee's argument and granted the motion for summary judgment.

{¶ 6}   The remaining claims against Mr. Marler were resolved and a final dismissal entry was filed on September 13, 2016.

{¶ 7} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶ 8} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT CROWN OILFIELD SERVICES, INC."

I

{¶ 9} In his sole assignment of error, appellant claims the trial court erred in granting summary judgment to appellee. We disagree.

{¶ 10} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211, 663 N.E.2d 639:

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶ 11} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

{¶ 12} As explained by this court in *Leech v. Schumaker,* 5th Dist. Richland No. 15CA56, 2015-Ohio-4444, ¶ 13:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be

denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶ 13} Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of its employees. *Clark v. Southview Hospital & Family Health Center,* 68 Ohio St.3d 435, 628 N.E.2d 46 (1994). "It is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment." *Byrd v. Faber,* 57 Ohio St.3d 56, 58, 565 N.E.2d 584 (1991). "[I]t is commonly recognized that whether an employee is acting within the scope of his employment is a question of fact to be decided by the jury. * * * Only when reasonable minds can come to but one conclusion does the issue regarding scope of employment become a question of law." *Osborne v. Lyles,* 63 Ohio St.3d 326, 330, 587 N.E.2d 825 (1992).

{¶ 14} Appellant argues the evidence presented to the trial court for summary judgment purposes created a genuine issue of material fact as to whether Mr. Marler was acting within the course and scope of his employment with appellee at the time of the accident. Appellant asserts Mr. Marler was on his way to appellee's job site in Harlem Springs when he fell asleep at the wheel and struck his motorcycle. The accident

occurred at approximately 5:20 a.m. Mr. Marler's fixed work hours were 6:00 a.m. to 6:00 p.m. Marler depo. at 32, 71. Appellee argues Mr. Marler was leaving his friend's home in Massillon and was headed to his company home in Waynesburg to retrieve his work truck, his work attire, and his tools and equipment, all required items to enter the job site. Appellee asserts Mr. Marler was not "on the clock" at the time of the accident.

{¶ 15} The trial court was presented with Mr. Marler's traffic crash witness statement and his deposition, and interrogatories completed by appellee. In its June 15, 2016 judgment entry granting summary judgment to appellee, the trial court concluded the following:

> The Court finds, based upon the testimony of Defendant Marler, that reasonable minds could only concluded (sic) that Defendant Marler was not in the course or scope of his employment with Defendant Crown at the time of the accident in this case. The Court finds that Defendant Marler was not facilitating or promoting any business of Defendant Crown at the time of the accident and was not "on the clock" with Defendant Crown at the time of the accident. Although initial statements made in the police report by Defendant Marler indicated that he was traveling to the job site in Harlem Springs. The uncontested testimony of Defendant Marler demonstrates that Defendant Marler was in his own personal vehicle, traveling from his friend's house to his work house in Waynesburg in order to obtain his work truck, his required work attire, i.e. steel-toed boots, hard hat, etc., and the tools and equipment necessary for him to perform his job. Defendant Marler was aware of

Defendant Crown's policies, including the restriction regarding driving personal vehicles to job sites. Defendant Marler knew that had he traveled directly to the work site, as argued by the Plaintiff, and as initially stated in the police report, he would not have been permitted to enter the job site at Harlem Springs. Plaintiff has not submitted any Civ.R. 56 evidence to rebut the testimony of Defendant Marler. * * * Reasonable minds could only come to one conclusion, that is, it would be nonsensical to find that Defendant Marler intended to drive to the job site directly from Massillon when he would not even had been permitted to enter the job site, because he was driving his personal vehicle, did not have proper attire, and did not have any tools to perform his job. (Footnote omitted.)

{¶ 16} In his initial statement to police, Mr. Marler stated he was headed to "work in Harlem Springs," appellee's job site. Marler depo. at 18-20, 57-59, 62; Plaintiff's Exhibit 2, Traffic Crash Witness Statement. Mr. Marler acknowledged during his deposition that his statements in Plaintiff's Exhibit 2 were true to the best of his knowledge. Marler depo. at 57-58. Mr. Marler agreed that when he would jump into his work truck and head to Harlem Springs, he was "on the clock." *Id.* at 62-63, 72. However, Mr. Marler testified at the time of the accident, he was in his personal pickup truck, heading to his company home in Waynesburg to retrieve his work truck, work attire (steel-toed boots, hardhat, welding hood), and tools and equipment, all required items to enter the job site. *Id.* at 32, 42, 46, 74-75. He had spent the night at his friend's home in Massillon after playing a softball game, and was headed to Waynesburg to retrieve the aforementioned items. *Id.*

at 39-42.  He was not permitted to drive his personal vehicle to a job site.  *Id.* at 53, 55.

Mr. Marler stated he was not on the clock and was not conducting any business for

appellee at the time of the accident.  *Id.* at 76.  He explained when he wrote in Plaintiff's

Exhibit 2 that he was on his way to Harlem Springs, "I was just in shock of what had

happened.  Dazed a little bit.  I got hit with an air bag."  *Id.* at 59.

{¶ 17} Mr. Marler gave the following answers during his deposition at 74-76:

Q. And you were driving your own vehicle that morning?

A. Yes, sir.

Q. And you didn't have any of your tools with you; correct?

A. No, sir.

Q. Did you have your work boots with you?

A. No, sir.

Q. So earlier you kind of testified that you already were in the, I think

is it called minimally acceptable gear?

A. Yeah.  My boots were in my company truck.

Q. So the boots were in the company truck?

A. Yes.

Q. So what did you have on for footwear?

A. Just shoes, tennis shoes.

Q. Just regular street shoes with no steel protection?

A. Yes, sir.

Q. Would you have been allowed on the job site in those tennis shoes?

A. No, sir.

Q. And as part of your job as fitter and welder, you use tools?

A. Yes, sir.

Q. Where were the tools - - your tools located that morning?

A. In my company truck.

Q. Which was at the company house?

A. Yes.

Q. Okay. So you didn't have your tools that were necessary for work in your personal vehicle; correct?

A. No, sir.

***

Q. So on the morning in question, in your mind, you're absolutely sure - - I know what you told the police officer when you were rattled after the crash, but in your mind, you're absolutely sure you were driving from DJ's house to the work house; correct?

A. Yes.

Q. And if you had tried to drive from DJ's house directly to the work site in tennis shoes and in your personal vehicle, would they have allowed you to start working that day?

A. No, sir.

Q. Were you on the clock at the time of the accident?

A. No, sir.

Q. Were you conducting any business on behalf of Crown at the time of the accident?

A. No, sir.

Q. Did anything Crown - - did Crown do anything to put you on the road that morning?

A. No, sir.

Q. And with respect to the truck you were driving that morning, it was your truck; correct?

A. Yes, sir.

{¶ 18} At first glance, it would appear that Mr. Marler's contradictory statements given in his traffic crash witness statement and his deposition as to where he was headed on the morning of the accident would create a genuine issue of material fact as to whether Mr. Marler was acting within the course and scope of his employment at the time of the accident. However, in reviewing the evidence presented to the trial court for summary judgment purposes in total, we agree with the trial court that reasonable minds can come to but one conclusion: Mr. Marler was not acting within the course and scope of his employment with appellee at the time of the accident. As the trial court noted, it would be nonsensical for Mr. Marler to be traveling to work at the time of the accident without all of the required items to enter the job site.

{¶ 19} Appellant also argues appellee's false responses to interrogatories further created genuine issues of material fact.  We agree with the trial court's determination on this issue (June 15, 2016 Judgment Entry at fn. 1):

> While Plaintiff argues that the responses of Defendant Crown to Interrogatories create a genuine issue of material fact, the Court finds this argument is without merit.  Defendant Marler testified that he did not see or respond to the Interrogatories, as they were completed by Defendant Crown.  Further, the Court does not find that the answers to the Interrogatories change the facts regarding Defendant Marler's intentions, as testified to by him, the morning of the accident.

{¶ 20} Upon review, we find the trial court did not err in granting summary judgment to appellee.

{¶ 21} The sole assignment of error is denied.

{¶ 22} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Baldwin, J. concur.

EEW/sg 323