[Cite as *King v. Emergency Med. Transport, Inc.*, 2022-Ohio-123.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STEPHANIE M. KING | : | JUDGES: |
| | : | |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2021CA00057 |
| | : | |
| EMERGENCY MEDICAL | : | |
| TRANSPORT, INC. | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Stark County Court of Common Pleas, Case No. 2020CV00657

JUDGMENT:    REVERSED AND REMANDED

DATE OF JUDGMENT ENTRY:    January 19, 2022

APPEARANCES:

For Plaintiff-Appellant:

M. SHAWN DINGUS
Plymale & Dingus, LLC
136 W. Mound St., Suite 100
Columbus, OH 43215

For Defendant-Appellee:

JAMES H. GORDON
JEREMY P. KOPP
Lock Gordon Law Group, LLC
100 E. Campus View Blvd., Suite 250
Columbus, OH 43235

*Delaney, J.*

{¶1} Plaintiff-Appellant Stephanie M. King appeals the April 28, 2021 judgment entry of the Stark County Court of Common Pleas.

### FACTS AND PROCEDURAL HISTORY

{¶2} On August 8, 2018, Plaintiff-Appellant Stephanie M. King filed a complaint for personal injury against Defendant-Appellee Emergency Medical Transport, Inc. ("EMT"). King voluntarily dismissed her complaint and refiled it on April 3, 2020. In her complaint, King alleged that EMT was vicariously liable for the negligent actions of its employees, which she claimed caused her permanent hearing damage. EMT filed its motion for summary judgment on the issue of vicarious liability on February 25, 2020. The following facts are based on the Civ.R. 56 evidence provided in support of the motion for summary judgment and response to the motion for summary judgment.

### The Alleged Tortious Act

{¶3} On August 20, 2016, King was an employee of the McDonald's restaurant located in Bellaire, Ohio. At 1:20 p.m., King took a break and went outside to sit on a retaining wall facing the restaurant parking lot. An ambulance pulled into the parking spot in front of where King was sitting, so that the front of the ambulance was about two feet from King. King observed the ambulance had two air horns on the bottom of the front bumper. The female driver got out of the ambulance, sat down on the wall with King, and they had a conversation. The male passenger exited the ambulance and went into the McDonald's restaurant.

{¶4} The male passenger exited the McDonald's restaurant with a bag of food and walked to the ambulance. The female driver got into the driver's seat and the male

passenger got into the passenger seat of the ambulance. King heard the ambulance start and at the same time as the ignition, King heard the ambulance horn. King immediately put her fingers to her ears when the ambulance horn sounded for approximately eight to ten seconds before the horn stopped. The ambulance pulled out of the parking spot and left the parking lot.

{¶5} When the ambulance pulled away, King saw the number "51" on the side of the ambulance. King went back into the restaurant and one of the crew told King that she heard the ambulance horn go off. King responded to her coworker and realized that she could not hear her own voice. King went to the emergency room at about 2:20 p.m. The emergency room physician examined her ears, determined her eardrums were not ruptured, and stated her hearing should return. The emergency room advised her to take a day off work and stay in a dark, quiet room. King followed the emergency room recommendations, but her hearing did not return.

{¶6} On August 24, 2016, the male ambulance passenger, a frequent customer, came into the McDonald's restaurant and asked King how her hearing was. He told her that he accidently hit the button for the horn.

{¶7} King followed up with her physician and hearing specialists because her hearing did not return. In May or June 2017, she was prescribed hearing aids for both ears due to 72% hearing loss in the right ear and 74% hearing loss in the left ear. After August 20, 2016, she also experienced headaches and balance issues. King said she did not have any hearing difficulties prior to August 20, 2016, but her colleague at McDonald's stated that prior to August 20, 2016, he believed she had difficulty hearing.

**Emergency Medical Transport, Inc.**

{¶8} EMT is a corporation located in North Canton, Ohio. It provides ambulance services, which includes 911 response and patient transportation between medical facilities, such as nursing homes to hospitals. EMT contracts with municipalities to provide ambulance services.

{¶9} On June 3, 2014, EMT contracted with the Village of Bellaire, Ohio to provide the village with emergency medical transportation. Bellaire is a small community in Belmont County, located on the eastern border of Ohio. Pursuant to the Ambulance Provider Contract, EMT was to maintain liability coverage at its own expense.

{¶10} EMT kept two ambulances in the Bellaire station building, leased by EMT from a company owned by the CEO of EMT, and two backup units in the building next door. The station building was a two-bay garage that had two bunk rooms for the crews to sleep, a kitchen, and a day room.

{¶11} EMT identified its ambulances with unique numbers displayed on the ambulance in varied locations, either on the fender, back, or side. On August 20, 2016, EMT owned two ambulances housed in the Bellaire station building identified as 51 and 52. Ambulance 51 had the number "51" displayed on the upper corner of both sides of the ambulance and two visible bugle-like air horns under the front bumper. The air horns could be activated two ways: (1) on the driver's side using the right hand to depress a large button located on the side of the center compartment, and (2) on the passenger side using a foot to depress the button located on the floorboard. The ambulance air compressor must be running to activate the air horns, but the air compressor was usually turned on.

**EMT 24-Hour Shifts and Lunch Breaks**

{¶12} Paramedics employed by EMT were required to work 24-hour shifts. There were usually four employees working a 24-hour shift together. The employees completed their own weekly time sheets, which provided blanks for the date, start time, and end time. EMT time sheets reflected that Mark Thompson and Sara Swoyer were working as paramedics in Bellaire on August 20, 2016, starting at 7:00 a.m., and they were assigned ambulance number 51.

{¶13} During the 24-hour shift, EMT paramedics were permitted to have breakfast, lunch, and dinner. The time sheet did not provide spaces to input time for meal breaks. EMT did not provide the paramedics with food during the 24-hour shift. Typically, the Bellaire EMT paramedics would leave the station building, get food, and bring the food back to the station building to eat. EMT permitted their employees to drive their assigned ambulance or their personal vehicle to a restaurant during their lunch break. If the EMT paramedic drove the assigned ambulance to a restaurant to get lunch, however, they were required to have a co-employee with them; they could not have the ambulance with one person on board. EMT required the paramedics to stay relatively close in the area when on lunch break.

{¶14} Thompson and Swoyer testified in their 2019 depositions that while they were working for EMT as paramedics on August 20, 2016, they had no recollection of the alleged incident with King. Neither recalled speaking with King or the ambulance horn being activated in the Bellaire McDonald's parking lot.

**Judgment**

{¶15} On April 28, 2021, the trial court issued its judgment entry finding there was no genuine issue of material fact and EMT was entitled to judgment as a matter of law. The trial court found the alleged incident did not occur within the scope of employment; therefore, EMT was not vicariously liable for the conduct of its employees. Because the EMT employees were on a personal errand of picking up lunch which provided no specific benefit to EMT, the trial court determined the employees were not in the course and scope of their employment.

{¶16} It is from this judgment that King now appeals.

## ASSIGNMENT OF ERROR

{¶17} King raises one Assignment of Error:

{¶18} "THE TRIAL COURT ERRED BY FINDING THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER EMPLOYEES OF THE DEFENDANT-APPELLEE WERE WORKING OUTSIDE THE COURSE AND SCOPE OF THEIR EMPLOYMENT AT THE TIME OF THE ALLEGED INCIDENT."

## ANALYSIS

### Standard of Review

{¶19} In her sole Assignment of Error, King argues the trial court erred when it granted summary judgment in favor of EMT. We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely

filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶20} The moving party bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶21} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

{¶22} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and

evidence as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

## Respondeat Superior

{¶23} King brought her claim of liability against EMT under the doctrine of respondeat superior and EMT argued it was entitled to summary judgment solely on that issue. Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of its employees based upon the principles of the agency relationship. *Buchanan v. Marler*, 5th Dist. Stark No. 2016CA00186, 2017-Ohio-1438, 2017 WL 1400014, ¶ 13 citing *Clark v. Southview Hospital & Family Health Center*, 68 Ohio St.3d 435, 628 N.E.2d 46 (1994).

{¶24} There are limits to an employer's vicarious liability for the negligence of its employee. "It is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment." *Byrd v. Faber*, 57 Ohio St.3d 56, 58, 565 N.E.2d 584 (1991). The Ohio Supreme Court characterized the scope of employment as when the employee's act "can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered or a natural, direct, and logical result of it." *Posin v. A.B.C. Motor Court Hotel, Inc.* 45 Ohio St.2d 271, 344 N.E.2d 334, 339 (1976) citing *Tarlecka v. Morgan*, 125 Ohio St. 319, 181 N.E. 450 (1932).

{¶25} Another limit to the employer's vicarious liability is the nature of the employee's conduct when the tortious act is committed:

> Generally, '[c]onduct is within the scope of employment if it is initiated, in
>
> part, to further or promote the [employer's] business.' *Martin v. Cent. Ohio*

*Transit Auth.* (1990), 70 Ohio App.3d 83, 92, 590 N.E.2d 411, 417. Ordinarily, an act committed by an employee when he is off duty is not within the scope of employment. *Biddle v. New York Cent. Rd. Co.* (1930), 43 Ohio App. 6, 8-9, 182 N.E. 601, 601-602; *Knecht v. Vandalia Med. Ctr., Inc.* (1984), 14 Ohio App.3d 129, 132, 14 OBR 145, 147-148, 470 N.E.2d 230, 233. An exception to this rule is where the employee has a duty to perform in furtherance of the [employer's] business after working hours and performs that duty, causing injury to a third party. *Biddle*, 43 Ohio App. at 8-9, 182 N.E. at 601-602. Still, an employee is acting outside the scope of employment where the act has no relationship to the employer's business or is so divergent that its very character severs the employer-employee relationship. *Thomas v. Ohio Dept. of Rehab. & Corr.* (1988), 48 Ohio App.3d 86, 89, 548 N.E.2d 991, 994.

*Estate of Rhome v. USCCS, Ltd. Partnership*, 5th Dist. Stark No. 2006CA00185, 2007-Ohio-2618, 2007 WL 1549001, ¶ 29 quoting *Mumford v. Interplast*, Inc., 119 Ohio App.3d 724, 734 (2nd Dist.1997). "To sever the [employee] from the scope of his employment, the act complained of must be such a divergence from his regular duties that its very character severs the relationship of [employer] and [employee]." *Bean v. State Farm Mut. Auto. Ins. Co.*, 8th Dist. Cuyahoga No. 74784, 2000 WL 218383, *4 quoting *Posin v. A.B.C. Motor Court Hotel*, 45 Ohio St.2d 271, 278, 344 N.E.2d 334 (1976).

{¶26} In order to establish a claim for negligence, a plaintiff must show: (1) a duty on the part of defendant to protect the plaintiff from injury; (2) a breach of that duty; and (3) an injury proximately resulting from the breach. *Bragg v. GFS Marketplace, LLC,* 5th

Dist. No. 2018CA00006, 2018-Ohio-3781, 109 N.E.3d 1277, 2018 WL 4520149, ¶ 34 citing *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989). It is the element of duty that we resolve upon our de novo review. Determining whether an employee was acting within the scope of their employment is ordinarily the province of the jury. "[I]t is commonly recognized that whether an employee is acting within the scope of his employment is a question of fact to be decided by the jury. * * * Only when reasonable minds can come to but one conclusion does the issue regarding scope of employment become a question of law." *Osborne v. Lyles*, 63 Ohio St.3d 326, 330, 587 N.E.2d 825 (1992). It is a question of law when the facts are undisputed and no conflicting inferences are possible. *Osborne, supra* at 330 citing *Mary M. v. Los Angeles* (1991), 54 Cal.3d 202, 213, 285 Cal.Rptr. 99, 105, 814 P.2d 1341, 1347, quoting *Perez v. Van Groningen & Sons, Inc.* (1986), 41 Cal.3d 962, 968, 227 Cal.Rptr. 106, 109, 719 P.2d 676, 679.

### The Nature of the EMT Employees' Conduct

{¶27} The question posed in this case is whether the EMT employees were in the scope of their employment when the alleged tortious act occurred. EMT argued in its motion for summary judgment, and the trial court agreed, Swoyer and Thompson were outside their scope of employment because they were on a personal errand and not promoting EMT's business. EMT states its employees did not render a specific benefit upon EMT when they drove Ambulance 51 to the McDonald's restaurant for the purpose of purchasing their lunch. King oppositely argues there are genuine issues of material fact whether Swoyer and Thompson were outside the scope of their employment when the air horn sounded. She contends that while the tortious act occurred while Swoyer and Thompson were obtaining their lunch, the nature of their employment relationship as

paramedics for EMT did not take them outside of the scope of their employment on August 20, 2016.

{¶28} Before we begin our de novo analysis, we note there appears to be no Ohio case law directly  on point with these factual circumstances. Both parties provided supporting case law discussing whether an employer is vicariously liable for their employee's automobile accident. While this matter does not involve an automobile accident, we find the provided case law relevant. Of specific guidance to this case is not the automobile accident itself, but the nature of the conduct of the employee at the time of the accident to answer the question of whether Swoyer and Thompson were outside the scope of employment.

{¶29} We first look to the employees' conduct at the time of the alleged negligent act. On August 20, 2016, Swoyer and Thompson drove their assigned ambulance to the Bellaire McDonald's restaurant for the purpose of obtaining lunch. The paramedics were not on an emergency call or transporting a patient at that time. The air horn sounded when the paramedics got back into the ambulance after purchasing the lunch.

{¶30} EMT contends the above facts demonstrate as a matter of law that paramedics committed the alleged negligent act outside the scope of their employment because it occurred while they were purchasing lunch. EMT posits that purchasing lunch was a personal errand which served no benefit to EMT. EMT cites to numerous decisions that determined the employee was not acting in the course and scope of their employment when the negligent act occurred while the employee was on a personal errand. *See Saleh v. Wertzbaugher*, 6th Dist. Lucas No. L-04-1093, 2004-Ohio-4852 (employee was on a personal errand and not in the scope of employment when she was in an automobile

accident on her way to pick up her husband for his doctor's appointment before she met with a client); *Byrd v. Smith*, 12th Dist. Clermont No. CA2007-08-093, 2008-Ohio-3597 (employee service technician for heating and air conditioning company was on a personal errand and not in the scope of employment when he was in accident while driving the employer's van after work hours while dropping off a car part at his father-in-law's house).

{¶31} EMT cites this court to *Hale v. Spitzer Dodge, Inc.*, 10th Dist. Franklin No. 04AP-1379, 2006-Ohio-3309, where the employee was a car salesperson for Spitzer Dodge and driving a demonstrator car provided by his employer when he caused an automobile accident. At the time of the accident, the employee was on his regularly scheduled day off as a car salesperson and driving to the dry cleaners. *Id.* at ¶ 4. The demonstrator car was an employee benefit, but the employee was not required to drive the demonstrator car. *Id.* at ¶ 4.

{¶32} The employee argued he was within the scope of his employment at the time of accident because he was providing a benefit to his employer in the form of advertising when he drove the demonstrator car. *Id.* at ¶ 26. The employee also argued he was constantly prospecting for clients whether at work or away from work. *Id.* at ¶ 26. The Tenth District Court of Appeals rejected the argument under the facts of the case. It found that even accepting the fact that Spitzer derived some benefit from the advertising on the demonstrator car and the employee was always prospecting clients, the undisputed facts showed at the time of the accident,

> [he] was not driving the demonstrator to or from work, was not demonstrating the vehicle, nor was he on his way to show the vehicle to a prospective client; further, apart from Sherman's general testimony that he

was always thinking about sales, there was no evidence that he had any specific plans to show the vehicle that day. *Katzman, supra.* Instead, he was on a purely personal errand, driving to the dry cleaners on his regularly scheduled day off from work, such conduct not involving the type he was employed to perform, nor occurring substantially within authorized time and space limits.

*Hale v. Spitzer Dodge, Inc.*, 10th Dist. Franklin No. 04AP-1379, 2006-Ohio-3309, 2006 WL 1781402, ¶ 26.

{¶33} EMT contends that when Swoyer and Thompson got lunch from the McDonald's restaurant, they were on a purely personal errand that served no benefit to EMT. EMT did not require its employees to eat lunch. Like the employees in *Hale* and *Byrd,* the paramedics were in an employer-provided vehicle at the time of the alleged incident, but the ownership of the vehicle in those cases did not place the employees back within the scope of their employment. EMT did not require its employees to drive their assigned ambulance to get lunch; it was the employees' choice to take their assigned ambulance or personal vehicle.

{¶34} If we stopped our analysis upon the above recited facts, we agree it appears that reasonable minds could come to only one conclusion that Swoyer and Thompson were outside the scope of their employment when the alleged incident occurred. However, in reviewing the facts in a light most favorable to the non-moving party, we also examine the terms of the employment between EMT, Swoyer, and Thompson and how they impacted the actions of the day.

{¶35} Swoyer and Thompson were required to work 24-hour shifts. EMT expected the paramedics would eat meals during their 24-hour shift. EMT did not provide defined meal break times or delineation of meal breaks in the time sheet. There was also an expectation that the EMT employees would sleep during their 24-hour shift. At the Bellaire station building, EMT provided its employees with a kitchen for eating and a bunk area for sleeping.

{¶36} EMT permitted its paramedic employees to leave the Bellaire station building for the purpose of obtaining lunch. There was no prohibition against an EMT paramedic from taking their personal vehicle for the purpose of obtaining lunch. EMT also permitted an EMT paramedic to drive an EMT ambulance for the purpose of obtaining lunch outside the Bellaire station building. If the EMT paramedic used an ambulance for that purpose, EMT required: (1) two EMT paramedics must be in the ambulance together and (2) the EMT paramedics must stay relatively close to the area.

{¶37} King refers this court to *Lightning Rod Mutual Insurance v. Chatman*, 64 Ohio App.3d 781, 582 N.E.2d 1122 (10th Dist.1990), where the Tenth District found that a city employee was not manifestly outside the scope of his employment when he was in an accident while driving a city-owned truck on his lunch break. The Civ.R. 56 evidence in the case showed that the city-owned vehicle driven by the employee at the time of the accident was equipped with a two-way radio. "[The employee] was driving to lunch, but his manager, Robert Roush, stated 'it was and remains division policy that any vehicle equipped with such a radio is "on call" for any emergency divisional business during all hours of the day including lunch breaks.'" *Id.* at 64 Ohio App.3d 781, 782–783. The employee testified in his deposition that at the time in question, he was on his unpaid

lunch break, and he was required to drive the city truck to lunch as close as possible to the work site. *Id.* at 783. He was not permitted to leave the truck at the work site and use other means of transportation to go to restaurant to eat his lunch. *Id.* The court found:

> When construed most strongly in favor of plaintiff, the evidence would not permit reasonable minds to conclude that defendant was manifestly outside the scope of his employment at the time in question. Furthermore, he was required to be in close proximity so that if he were called for an emergency or other purposes, he could hear the two-way radio. Under the evidence before the trial court, there simply was no other reasonable conclusion but that defendant was not manifestly outside the scope of his employment while operating the city truck at the time of the collision.

*Id.* at 783.

{¶38} An employee who departs from his employment to engage in affairs of his own relieves the employer from liabilities for the employee's acts. *Posin, supra* at 278 citing *Railway v. Shields*, 47 Ohio St. 387, 24 N.E. 658 (1890); *White Oak Coal Co. v. Rivoux*, 88 Ohio St. 18, 120 N.E. 302 (1913). However, not every deviation from the strict course of duty is a departure that will relieve an employer of liability for the acts of the employee. The fact that an employee, while performing his duty to his employer, incidentally does something for himself or a third person, does not automatically relieve the employer from liability for negligence which causes injury to another. *Loughead Co. v. Hollenkamp* (1924), 3 Ohio Law Abst. 558. *Posin, supra* at 278.

{¶39} Reviewing the facts of the alleged incident in conjunction with EMT's terms of employment in a light most favorable to the non-moving party, we find that conflicting

inferences can be made as to whether the EMT employees were outside the scope of employment on August 20, 2016. There are two distinctive facts in this case that move it beyond concluding it was a mere personal errand. First, the paramedics worked a 24-hour shift and Swoyer and Thompson were working the 24-hour shift when the alleged incident occurred. There was no Civ.R. 56 evidence that the employees were "on call" where they came to work only when called. The employees reported to the Bellaire station building and remained there for the 24-hour shift to respond to medical transport requests. During that 24-hour shift, EMT appeared to expect that its employees would eat and sleep. King argues that it was to the benefit of EMT that its employees were well-nourished. While there was no testimony that EMT required its employees to be properly nourished or well-rested, EMT provided the paramedics with a place to eat and sleep at the Bellaire station building. The time sheets did not provide a space for meal breaks. There was no testimony that the employees were required to take a meal break, or that they were not paid for meal breaks.

{¶40} Second, Swoyer and Thompson drove their assigned ambulance to the McDonald's restaurant for the purpose of purchasing lunch. They were permitted to take their personal vehicle, but they chose to drive their assigned ambulance. It was clear from the record that EMT placed mandatory requirements on the employees if the paramedic chose to drive the ambulance to purchase lunch. The two paramedics were required to drive together in their assigned ambulance, and they were required to stay relatively close to the area.

{¶41} EMT contracted with the Village of Bellaire to provide emergency medical transport to its residents. Quickly responding to emergency medical requests would serve

a benefit upon EMT. A reasonable fact finder could draw an inference that EMT imposed the two requirements on paramedics who drove the assigned ambulance for the purpose of purchasing a meal, so the paramedics were in close proximity to quickly respond in the assigned ambulance to emergency medical requests. It could be argued the employees' choice to drive the ambulance to purchase lunch on August 20, 2016 was actuated by a purpose to serve EMT. Not every deviation from the course of duty is a departure relieving the employer from liability for the acts of the employee. In this case, reasonable minds could reach different conclusions as to whether Swoyer and Thompson were on a personal errand that removed them from the scope of employment or did the circumstances of the 24-hour shift and the use of the ambulance keep them within the scope of employment because there was a benefit to EMT.

{¶42} Upon our de novo review, we find there are genuine issues of material fact for a jury's determination as to whether Swoyer and Thompson were outside the scope of their employment on August 20, 2016. Accordingly, we sustain King's sole Assignment of Error.

**CONCLUSION**

{¶43} The judgment of the Stark County Court of Common Pleas is reversed, and the matter remanded to the trial court for further proceedings consistent with this Opinion and law.

By: Delaney, J.,

Baldwin, P.J. and

Hoffman, J., concur.